**James E. HOLT, individually, as Administrator of the Estate of Lenora Allene Holt, deceased, and as guardian of Michael Christopher Holt, a minor, Plaintiffs,**

v.

**KLOSTERS REDERI A/S, Defendant.**

**No. G–245–71 CA.**

United States District Court,
W. D. Michigan, S. D.

Feb. 12, 1973.

---

**356**

John L. Foster, Foster, Meadows & Ballard, Detroit, Mich., for plaintiff.

Timothy D. Wittlinger, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., and James M. Estabrook, Haight, Gardner, Poor & Havens, New York City, for defendant.

## OPINION

ENGEL, District Judge.

Plaintiff, a Michigan citizen, commenced this admiralty action against Klosters Rederi A/S, an alien corporation, seeking pecuniary loss for the death of plaintiff's wife. Plaintiff alleges that the death of his wife was proximately caused by defendant's failure to provide her with adequate medical treatment when she became ill in the midst of a Caribbean Cruise. Plaintiff seeks recovery under Death on the High Seas Act, 46 U.S.C.A. §§ 761–768.[1]

Plaintiff alleges in his complaint that he and his wife boarded defendant's ship, *M/V Skyward* at Port Everglades, Florida, on March 20, 1971; that thereafter the *Skyward* embarked upon a cruise through the Caribbean; that once under way, plaintiff's wife became ill; that the ship's doctor misdiagnosed her illness as seasickness; that the failure of the ship's doctor to provide proper medical treatment led to a deterioration in plaintiff's wife's condition; that although the ship's captain knew of plaintiff's wife's distress, he did not take proper precautionary measures; that by the time the *Skyward* docked in San Juan, Puerto Rico, plaintiff's wife was in dire need of emergency care and surgery; and that although surgery was ultimately performed, plaintiff's wife died on March 25, 1971.

Defendant moves to dismiss this suit or in the alternative to have this suit transferred to a more convenient forum in the Southern District of Florida. Both parties have submitted briefs on the several issues raised and have agreed that the court may consider the several affidavits on file as well as the deposition of Frederick N. Metcalf, vice president of sales of the defendant corporation.

### Motion to Dismiss

■ Defendant contends that it is entitled to a dismissal because it does not maintain the requisite contacts with Michigan to enable this court to render a binding personal judgment against it. Defendant, as well as plaintiff, relies upon the Michigan jurisdictional statutes and case law in support of their respective positions. However, this is not a diversity case and accordingly, the principles of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) do not apply. Plaintiff predicates subject matter jurisdiction and his right of recovery upon federal law exclusively. 28 U.S.C.A. § 1333; 46 U.S.C.A. §§ 761–768. Therefore federal law and not state law is controlling. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953) and see Scott v. Middle East Airlines Co., S. A., 240 F.Supp. 1 (S.D.N.Y.1965).

■ The import of this holding is twofold: (1) Where a defendant challenges the court's jurisdictional power to render a binding judgment on federal questions, the court must examine the facts in light of the constitutional pro-

---

1. Plaintiff also seeks recovery under the law of Puerto Rico and Norway.

scriptions of the due process clause of the *Fifth* rather than the Fourteenth Amendment, Edward J. Moriarty & Co. v. General Tire and Rubber Co., 289 F. Supp. 381 (S.D.Ohio 1967); First Flight Co. v. National Carloading Corp., 209 F.Supp. 730 (E.D.Tenn.1962); and see Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4th Cir. 1965),[2] and (2); the inquiry is thus expanded to ascertaining whether defendant has the requisite minimum contacts[3] with the *United States* as an entity rather than the forum state in which the federal court sits. As the court observed in *Moriarty*, 289 F.Supp. page 390:

> Thus, in our view, the judicial jurisdiction over the person of the defendant does not relate to the geographical power of the particular court which is hearing the controversy, but to the power of the unit of government of which that court is a part. The limitations of the concept of personal jurisdiction are a consequence of territorial limitations on the power of the respective forums. Thus, as applied to the states, the constitutional test for personal jurisdiction involves a determination as to whether the defendant has certain minimal contacts *with the forum state*, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

> By the same token, we feel that the appropriate inquiry to be made in a federal court where the suit is based upon a federally created right is whether the defendant has certain minimal contacts with the United States, so as to satisfy due process requirements under the Fifth Amendment. For a thorough discussion of this theory, see Green, "Federal Jurisdiction in Personam of Corporations and Due Process," 14 Vanderbilt L. Rev. 967 (1961); Note "Jurisdiction of Federal District Courts over Foreign Corporations," 69 Harv.L.Rev. 508 (1956). Also see, Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2 Cir., 1960); Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4 Cir., 1965); Mutual International Export Co. v. Napco Industries, Inc., 114 U.S.App. D.C. 392, 316 F.2d 393 (1963); Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147 (5 Cir., 1954); Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778 (E.D.Pa., 1961); Bar's Leaks Western v. Pollock, 148 F.Supp. 710 (N.D.Cal., 1957); Singleton v. Atlantic Coast Line R. R. Co., 20 F.R.D. 15 (E.D.Mich., 1956).

■ Assuming that a court finds that a defendant has maintained such minimum contacts with the United States, a federal court may nonetheless be restricted in exercising its nationwide *in personam* power if Congress or the Supreme Court sees fit to limit it. Such limitations may be found in venue statutes, the Federal Rules of Civil Procedure and also within the federal statute from which a plaintiff derives his rights and remedies. See People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918). Unless objection is made to the exercise of this territorial jurisdiction,

2. The constitutional test under either provision is substantially the same. The court in *First Flight* found that the basic jurisdictional test developed by the Supreme Court dealing with state jurisdictional matters under the Fourteenth Amendment *is* "fundamentally sound" and suitable for analogical application to federal jurisdiction under the Fifth Amendment. Thus the constitutional requirement for jurisdiction in this case is whether defendant "has such minimum contacts with the United States that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *First Flight*, 209 F. Supp, page 738 and see Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147 (5th Cir. 1954).

3. The sufficiency of the minimum contacts would naturally differ when the United States is used as the focal point of the constitutional inquiry.

however, the court has the power to render an *in personam* judgment.

■■ Defendant's motion to dismiss challenges this court's power to render an *in personam* judgment only. All other objections which defendant may have raised by such motion have been waived.[4] As the issue is thus framed, the court must examine the facts of this case as reflected in the deposition and affidavits on file.

■ Defendant is a Norwegian corporation with its head office in Oslo, Norway. It owns and operates a fleet of ships under the trade name of Norwegian Caribbean Lines (NCL). The fleet, of which the *M/V Skyward* is a member, operates principally in and through the Caribbean Sea.

The individual and group tours which NCL offers embarks exclusively from Miami, Florida. NCL has no other ports-of-call within the continental United States. Although NCL maintains branch offices in several cities throughout the United States, it draws 42% of its passenger traffic from Florida alone. Arison Shipping Company, a Florida corporation, was NCL's general sales agent until February of 1972.

NCL has other important market areas from which it draws its business. Some are New York, Chicago, Cleveland, Dallas, and Los Angeles. NCL brochures reflect that it maintains offices in all these locations.

Business is solicited from other minor areas also. Such solicitation is done through travel agencies rather than on an individual passenger basis. Travel agencies are supplied with NCL's literature and when an individual or group wishes to take an NCL cruise, the agency will confirm that there is space available. The travel agencies do not write the tickets. The tickets are issued through an NCL office either in Chicago, Miami or New York.

In this case, plaintiff's cruise contract was made in Miami and solicited by a Minnesota travel agent. Arctic Enterprises, plaintiff's employer, arranged for and presumably paid for the cruise. Plaintiff and his wife were guests of Arctic Enterprises on this voyage, as the result of plaintiff's efforts in a sales contest.

NCL has several other corporate interests, all of them in Florida. It owns Sun Services, Inc., a business which handles all NCL's laundry needs. It owns Landward Corporation, which in turn owns a piece of real estate in Miami. It owns or owned a car leasing company, a freight company and a cattle farm.[5]

Taken as a whole, defendant's contacts with the United States, both qualitatively and quantitatively, are constitutionally sufficient to enable this court to render a binding judgment against it. Defendant has elected to enter the territorial domain of the United States for its economic gain. It has established itself in an identifiable geographic location to effectuate and maximize its business dealings. It has promoted its product on a national scale through advertising and other market networks. Clearly, defendant's contacts with the United States exceed any constitutional minimum for a limited *in personam* jurisdiction. Therefore, defendant's motion to dismiss is denied.

---

4. See F.R.Civ.P. 12(g & h). The court notes that an alien may be sued in any district. 28 U.S.C.A. § 1391(d). An alien includes an alien corporation. Seilon Inc. v. Brema S.P.A., 271 F.Supp. 516 (N.D. Ohio 1967). Nonetheless, an alien is entitled to the same due process protection as any other person. See Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954).

5. NCL had several sporadic contacts with the State of Michigan. It contacted local travel agencies in an effort to drum up business. It also advertised occasionally in Detroit newspapers. (See affidavit of Frederick N. Metcalf). However, all these contacts, assuming this were a diversity case, would be insufficient to meet the "minimum contacts" of *International Shoe* or the Michigan jurisdictional statutes, M.S.A. §§ 27A.711 and 715, M.C.L.A. §§ 600.711 and 600.715.

### Change of Venue

Defendant, in the alternative, seeks to change the venue to a more convenient forum in the Southern District of Florida. In support of this motion, defendant states that a majority of its witnesses are either located in Florida or Puerto Rico. This is understandably so since NCL does most of its business in Florida.

Plaintiff's claim is basically a negligence action. It is alleged that defendant hired personnel who were unqualified to administer to the needs of the ship's passengers; that as a result of such action, plaintiff's wife was treated by an incompetent doctor and crew which was the proximate cause of her death. Proof of such allegations will require testimony of the ship's crew as well as other personnel of defendant corporation. None of these witnesses is located in this district and most of them are located in and around southern Florida.

On the other hand, only plaintiff resides in Michigan. This suit has no other connection with the forum state. Accordingly, the court grants defendant's motion to transfer the case to the Southern District of Florida.