**PPS, INC., Plaintiff,**

v.

**JEWELRY SALES REPRESENTATIVES, INC., et al., Defendants.**

**No. 74 Civil 3789.**

United States District Court,
S. D. New York.

March 11, 1975.

---

376

Alfred W. Vibber, Arthur Klein, Klein & Levine, New York City, for plaintiff; Arnold B. Christen, Fisher, Christen & Sabol, Washington, D. C., of counsel.

Ernest F. Marmorek, New York City, for defendants.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff PPS, Inc. ("PPS") claims copyright, trademark, and "dress of goods" rights in a line of "I Like You" products manufactured and sold by its licensee, Rosecraft, Inc. The line of

products includes costume jewelry in the shape of an apple and bearing the mark "I Like You," and other products containing the apple and "I Like You" design. PPS alleges that the defendants in their various capacities have engaged and intend to engage in the manufacture and sale of a line of costume jewelry copied from its "I Like You" line, and seeks injunctive relief and monetary damages for copyright and trademark infringement, and for unfair competition.

Plaintiff PPS moves for a preliminary injunction, and defendant Nu-Style Company, Inc. ("Nu-Style") moves to dismiss the complaint for lack of personal jurisdiction and improper venue, or to transfer the action under 28 U.S.C., section 1404(a), to the District of Massachusetts.

*Nu-Style's Motion to Dismiss for Lack of Jurisdiction and Improper Venue*

Only Nu-Style urges lack of jurisdiction and improper venue. The other defendants, Jewelry Sales Representatives, Inc. ("Jewelry Sales"), Aberbach, and Puccini Jewelry Co. ("Puccini"), concede jurisdiction and venue.

Plaintiff claims to have effected service on Nu-Style by serving Aberbach and Jewelry Sales as its "managing or general agents"[1] in this district, and also by personal service in Massachusetts upon Nu-Style's president.[2]

The question of Nu-Style's amenability to jurisdiction, service of process, and venue in this district turns largely upon the relationship between Nu-Style and Jewelry Sales. Jewelry Sales, of which Aberbach is its president, director, and controlling shareholder, is a New York

corporation and conducts its business in this district. It is the exclusive distributor or sales representative for costume jewelry manufactured by Nu-Style.[3] Jewelry Sales does not buy the jewelry and resell it; rather, it solicits customers, shows them the items, takes the orders, and sends the orders to Nu-Style, which manufactures the items, ships them to the customers, and bills the customers directly. Jewelry Sales does not make any binding commitments to sell; Nu-Style decides whether to accept the orders forwarded by Jewelry Sales and whether to extend credit. Nu-Style also controls the prices: while Jewelry Sales occasionally gives a customer a small discount to induce it to buy, Nu-Style has the right to refuse the order or notify the customer of the acceptable price. In addition to taking orders for Nu-Style, Jewelry Sales provides showroom space for Nu-Style's products. For all these services, Jewelry Sales is paid a commission of 7½%. Defendant Aberbach sums up the relationship of Jewelry Sales to Nu-Style as follows: "We [Jewelry Sales] are strictly sales representatives, nothing more and nothing less, subject to anything they may tell us to do."

The responsibilities assumed by Jewelry Sales in its position as exclusive sales representative for Nu-Style are sufficient, in this court's view, to warrant the assumption that notice to Jewelry Sales would be effective notice to Nu-Style, and to justify the conclusion that Jewelry Sales is a "managing or general agent" within the meaning of Rule 4(d)(3) of the Federal Rules of Civil Procedure.[4] If, then, Nu-Style is

---

1. Fed.R.Civ.P. 4(d)(3). *See also* N.Y.C.P. L.R. § 311(1) (McKinney's Consol.Laws 1972).

2. Fed.R.Civ.P. 4(d)(7), (e), (f); N.Y.C.P. L.R. §§ 311(1), 313 (McKinney's 1972).

3. The jewelry is manufactured by Nu-Style and shipped to the customers by Sir Richard Company. The jewelry bears the mark "SIR–R." Sir Richard is not a corporation, but simply a division of Nu-Style. Sir Rich-

ard's acts, therefore, are clearly attributable to Nu-Style, and the court will hereafter refer to Nu-Style to include its division Sir Richard.

4. *See* Bomze v. Nardis Sportswear, Inc., 165 F.2d 33 (2d Cir. 1948); Diapulse Corp. v. Birtcher Corp., 362 F.2d 736, 739–41 (2d Cir.), cert. denied, 385 U.S. 801, 87 S.Ct. 9, 17 L.Ed.2d 48 (1966); Boryk v. DeHavilland Aircraft Co., 341 F.2d 666, 668–69 (2d Cir.

amenable to jurisdiction, service upon Jewelry Sales is sufficient to subject it to the court's jurisdiction. In addition, if, as the court hereafter concludes,[5] Nu-Style is amenable to the "long-arm" jurisdiction of the New York courts, personal service of its president in Massachusetts is sufficient to enable this court to acquire jurisdiction over Nu-Style.[6]

In determining Nu-Style's amenability to jurisdiction, the court is faced at the outset with the question whether amenability to personal jurisdiction on the copyright claim is to be tested by state or federal law. While the Second Circuit has specifically left open the question whether state of federal jurisdictional principles are applicable in federal question litigation,[7] several courts, relying on language of the Supreme Court in Angel v. Bullington,[8] have resolved the question in favor of federal law.[9] Federal law appears to be more appropriate, particularly with respect to a copyright claim, over which the subject matter jurisdiction of the federal courts is exclusive.

In this case, the view of federal law taken by most courts that have applied a federal standard would permit jurisdiction over Nu-Style. Nu-Style's contacts with the State of New York[10] are sufficient to satisfy the due process standards of International Shoe Co. v. Washington[11] and its progeny, and valid service was made upon Jewelry Sales as managing agent under Rule 4(d)(3).

It is not necessary, however, to rely solely on any such federal standard of amenability to jurisdiction, since Nu-Style is also subject to personal jurisdiction under New York's "long-arm" statute, C.P.L.R., section 302, which provides in pertinent part:

"(a) *Acts which are the basis of jurisdiction.*

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person *or through an agent*:

1. transacts any business within the state; or

1965); Lone Star Package Car Co. v. Baltimore & O. R.R., 212 F.2d 147, 152 (5th Cir. 1954).

5. Text accompanying notes 12–16 *infra*.

6. Fed.R.Civ.P. 4(d)(7), (e), (f); N.Y.C.P. L.R. §§ 311(1), 313 (McKinney's 1972).

7. Aquascutum of London, Inc. v. S. S. American Champion, 426 F.2d 205, 211 n. 4 (2d Cir. 1970); Arrowsmith v. United Press Int'l, 320 F.2d 219, 228 n. 9 (2d Cir. 1963) (en banc). *Cf.* Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1339–40 (2d Cir. 1972).

8. 330 U.S. 183, 192, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

9. Fraley v. Chesapeake & O. Ry., 397 F.2d 1 (3d Cir. 1968); Hartley v. Sioux City & New Orleans Barge Lines, Inc., 379 F.2d 354, 356 (3d Cir. 1967); Volkswagen Interamericana, S.A. v. Rohlsen, 360 F.2d 437, 440 (1st Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966); Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 549 (4th Cir. 1965); Lone Star Package Car Co. v. Baltimore & O. R.R., 212 F.2d 147 (5th Cir. 1954); Holt v. Klosters Rederi A/S, 355 F.Supp. 354, 358 (W.D.Mich., S.D.1973);

Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 389–90 (S.D. Ohio, W.D.1967); Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778 (E.D.Pa. 1961). *See* Time, Inc. v. Manning, 366 F.2d 690, 694 (5th Cir. 1966); Ostow & Jacobs, Inc. v. Morgan-Jones, Inc., 178 F.Supp. 150 (S.D.N.Y.1959). *But see* Manchester Modes, Inc. v. Lilli Ann Corp., 306 F.Supp. 622 (S. D.N.Y.1969); Metropolitan Staple Corp. v. Samuel Moore & Co., 278 F.Supp. 85 (S.D. N.Y.1967).

10. For comment on the anomaly of examining contacts with the state in applying a federal standard, *see* Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F. Supp. 381, 389–90, esp. n. 2 (S.D.Ohio, W. D.1967). *See also* Holt v. Klosters Rederi A/S, 355 F.Supp. 354, 358 (W.D.Mich., S. D.1973), in which the court examined contacts with the United States.

11. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See* Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ." [emphasis added]

Whether Nu-Style is amenable to jurisdiction under this provision depends upon whether Aberbach and Jewelry Sales are "agents" whose activities are attributable to Nu-Style for jurisdictional purposes. A formal agency relationship is not necessary to impute to a non-resident defendant for jurisdictional purposes the activities of another.[12] In determining whether a local sales representative like Jewelry Sales is for jurisdictional purposes an "agent" whose activities are attributable to the manufacturer, rather than an independent entity whose activities are not so attributable, a significant factor is the degree of control that the manufacturer retains to accept or reject orders secured by the local representative, to set the terms of the sale, and to establish the conditions of payment.[13] The court is of the view that Nu-Style maintained sufficient control over sales activities in which Jewelry Sales was involved,[14] that the activities of Jewelry Sales within the State of New York are properly attributable to Nu-Style, and that Nu-Style is properly held to have transacted business in New York "through an agent." [15] Since the various causes of action in this case arose out of that transaction of business, Nu-Style is subject to personal jurisdiction under section 302(a)(1).

Since the court has concluded that the activities of Jewelry Sales within the State of New York are attributable to Nu-Style for jurisdictional purposes, Nu-Style is also subject to personal jurisdiction under section 302(a)(2) by virtue of the commission of tortious acts within the state.[16] In addition, Nu-Style is subject to long-arm jurisdiction under section 302(a)(3)(i). Its manufacture of the allegedly infringing articles in Massachusetts and its shipping them into the state for distribution

12. Galgay v. Bulletin Co., 504 F.2d 1062 (2d Cir., 1974); Elman v. Belson, 32 A.D.2d 422, 302 N.Y.S.2d 961 (2d Dep't 1969); Legros v. Irving, 77 Misc.2d 497, 354 N.Y.S.2d 47 (Sup.Ct.1973).

13. Compare Dolly Toy Co. v. Bancroft-Rellim Corp., 97 F.Supp. 531 (S.D.N.Y.1951); Backer v. Gonder Ceramic Arts, Inc., 90 F. Supp. 737 (S.D.N.Y.1950), Hodom v. Stearns, 32 A.D.2d 234, 301 N.Y.S.2d 146 (4th Dep't), appeal dismissed, 25 N.Y.2d 722, 307 N.Y.S.2d 225, 255 N.E.2d 564 (1969) with Standard Wine & Liquor Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y. S.2d 299, 228 N.E.2d 367 (1967), aff'g 25 A.D.2d 236, 268 N.Y.S.2d 602 (1st Dep't 1966) (local representative bought goods from nonresident corporation and resold them), A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dep't 1966) (court found that sales representative was "in no way under the defendant's control.") See also Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 18–19, 308 N.Y.S.2d 337, 341–42, 256 N.E.2d 506 (1970); DelBello v. Japanese Steak House, Inc., 43 A.D.2d 455, 352 N.Y.S.2d 537, 540 (4th Dep't 1974); John De Nigris Associates, Inc. v. Pacific Air Transport Int'l, Inc., 38 A.D.2d 363, 329 N.Y.S.2d 939 (1st Dep't 1972); Elman v. Belson, 32 A.D.2d 422, 302 N.Y.S.2d 961, 964 (2d Dep't 1969).

14. See text following note 2 supra.

15. In addition to the New York cases already cited, see Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F.Supp. 155 (D.R.I.1969); Denis v. Perfect Parts, Inc., 142 F.Supp. 259, 260–61 (D.Mass.1956).

16. See R.F.D. Group Ltd. v. Rubber Fabricators, Inc., 323 F.Supp. 521, 526–27 (S.D.N. Y.1971).

constitute the commission of a "tortious act without the state causing injury to person or property within the state," and Nu-Style regularly solicits business and engages in other persistent conduct in New York through Jewelry Sales.

█ The venue provision relating to copyright actions, 28 U.S.C., section 1400(a), provides that such actions "may be instituted in the district in which the defendant or his agent resides or may be found." Since Nu-Style's agent, Jewelry Sales, maintains its office in Manhattan, there can be no question that it is found in this district. Venue is therefore proper as to Nu-Style.[17]

*Nu-Style's Motion to Transfer*

As an alternative to its motion to dismiss, Nu-Style moves to have this case transferred to the District of Massachusetts pursuant to 28 U.S.C., section 1404(a), which permits a transfer of a civil action "to any other district . . . where it might have been brought." It is not at all clear that this action could have been brought in the District of Massachusetts, since it does not appear that jurisdiction and venue exist in Massachusetts as to Jewelry Sales, Aberbach, and Puccini. But apart from this, there is no sufficient showing to warrant relief under section 1404(a) for the convenience of parties and witnesses. The motion to transfer is denied.[18]

*Plaintiff's Motion for a Preliminary Injunction*

*Copyright Claims*: Turning to the merits of plaintiff's request for preliminary relief, the court first considers the claims of copyright infringement. Plaintiff has three certificates of registration from the Copyright Office: one for a published book entitled "I Like You & Design"—the design consisting of the apple and the words "I Like You"; a second for a work of art (sculpture) entitled "I Like You," consisting of a 3-dimensional design based on the original 2-dimensional print; and a third for a reproduction of a work of art, entitled "I Like You & Design," consisting of a drawing on a T-shirt, the design for which was based on the original copyrighted work.

█ Plaintiff is entitled to a preliminary injunction if it establishes a prima facie case of copyright infringement; it need not provide detailed proof of irreparable harm.[19] A prima facie case of infringement can generally be established by proof of (1) ownership of a valid copyright; and (2) copying by the alleged infringer, which can be inferred from evidence of access and substantial similarity between the copyrighted material and the alleged infringer.[20]

█ Plaintiff's certificates of registration suffice to prove plaintiff's ownership of valid copyrights, in the absence of a challenge by the defendants.[21]

17. *See* Dolly Toy Co. v. Bancroft-Rellim Corp., 97 F.Supp. 531, 536 (S.D.N.Y.1951). *See also* Droke House Publishers, Inc. v. Aladdin Distributing Corp., 352 F.Supp. 1062, 1065 (N.D.Ga.1972); Fooshee v. Interstate Vending Co., 234 F.Supp. 44, 48 (D. Kan.1964); Gauvreau v. Warner Bros. Pictures, Inc., 178 F.Supp. 510 (S.D.N.Y.1958); Geo-Physical Maps, Inc. v. Toycraft Corp., 162 F.Supp. 141, 146–47 (S.D.N.Y.1958); Backer v. Gonder Ceramic Arts, Inc., 90 F. Supp. 737 (S.D.N.Y.1950); McDevitt v. Dorsey, 67 F.Supp. 818 (N.D.Ohio, E.D. 1946); *cf.* People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 84, 38 S.Ct. 233, 62 L.Ed. 587 (1918).

18. *See* Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

19. Robert Stigwood Group Ltd. v. Sperber, 457 F.2d 50, 55 (2d Cir. 1972); Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 852 n. 1 (2d Cir.), cert. dismissed, 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967); Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144, 147 (2d Cir. 1956); Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955); American Code Co. v. Bensinger, 282 F. 829, 935 (2d Cir. 1922).

20. Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 741 (9th Cir. 1971); Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir. 1966); Joshua Meier Co. v. Albany Novelty Co., 236 F.2d at 147.

21. Herbert Rosenthal Jewelry Corp. v. Zale Corp., 323 F.Supp. 1234, 1238 (S.D.N.Y. 1971).

The defendants do claim that the copyrights are invalid because plaintiff's design lacks creativity. But the required level of creativity is minimal,[22] as is the required level of originality.[23] Both requirements are clearly met in this case.[24] For purposes of its motion for a preliminary injunction, plaintiff has amply demonstrated its ownership of valid copyrights.

The defendant Nu-Style's access to plaintiff's design is established by the testimony of its president and its plant manager that Nu-Style's sample maker purchased one of plaintiff's "I Like You" pins and that they told the sample maker to "make up a line of jewelry keeping this idea in mind."

Plaintiff is entitled to a preliminary injunction only if the defendant has appropriated those characteristics of plaintiff's design that are entitled to copyright protection. That defendants' costume jewelry is similar to plaintiff's, and that it was based upon plaintiff's design is not by itself dispositive.[25] A copyright protects only the expression of an idea, not the idea itself.[26] As Judge Learned Hand noted, however: "Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc."[27] The distinction between an idea and its

expression is largely one of degree,[28] and "[t]he guiding consideration in drawing the line is the preservation of the balance between competition and protection reflected in the patent and copyright laws."[29]

Two recent cases involving costume jewelry suggest the difference between an idea and its expression. In Herbert Rosenthal Jewelry Corp. v. Kalpakian,[30] the Ninth Circuit held that a jeweled bee pin is an "idea" that others are free to copy, and in Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.,[31] our Circuit reached the same conclusion with respect to gold turtle pins. In the latter case, the Second Circuit observed that a manufacturer "cannot, by obtaining a copyright upon one design of a turtle pin, exclude all others from manufacturing gold turtle pins on the ground that they are substantially similar in appearance."[32] In this case, plaintiff cannot exclude all others from manufacturing costume jewelry in the form of an apple or other fruit, nor can it exclude all others from manufacturing such fruit jewelry with the words "I Like You" attached. Another manufacturer may produce such items so long as the visual effect of its items is sufficiently different from that of plaintiff's. In short, fruit jewelry with the words "I Like You" attached is an "idea" that the defendants were free to copy; it is only the plaintiff's particular expression

---

22. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903).

23. Herbert Rosenthal Jewelry Corp. v. Grossbardt, 436 F.2d 315, 316 (2d Cir. 1970); Trifari, Krussman & Fishel v. Charel Co., 134 F.Supp. 551 (S.D.N.Y.1955).

24. Defendants' attorneys also made vague references in their papers submitted on these motions to their belief that plaintiff's registration certificates are defective, but these references are insufficient to raise an issue as to plaintiff's ownership of valid copyrights.

25. Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d at 741.

26. E. g., Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954); Peter

Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960); National Comics Publications v. Fawcett Publications, 191 F.2d 594, 600 (2d Cir. 1951).

27. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d at 489.

28. Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d at 742; see Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir. 1930), cert. denied, 282 U.S. 902, 51 S. Ct. 216, 75 L.Ed. 795 (1931).

29. Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d at 742.

30. 446 F.2d 738 (9th Cir. 1971).

31. 509 F.2d 64 (2d Cir., 1974).

32. Id. at 65.

of that idea that enjoys copyright protection.

In determining whether one expression of an idea is a copy of another, the test has been stated generally to be "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." [33] More specifically, the test for determining whether a design has been copied is whether an ordinary observer, who has not set out to detect disparities, "would be disposed to overlook them, and regard their aesthetic appeal as the same." [34]

The court is called upon to determine whether the plaintiff's copyrights, all of which incorporate the design of an apple with "I Like You" attached, are infringed by the defendants' products, which include a similar "I Like You" inscription attached to the following fruits:

(1) an apple (Exhibits N–1, N–2, N–3, N–8);

(2) a cherry (Exhibit N–4);

(3) a pear (Exhibits N–5, N–6, N–9);

(4) an orange (Exhibit N–7);

(5) a cluster of grapes (Exhibits N–10, N–12);

and

(6) a strawberry (Exhibit N–11).

For each of these six basic designs, Nu-Style manufactures four items—earrings, a bracelet, a pin, and a pendant.

Applying the standards set forth above, the court finds that Nu-Style's apple items—Exhibits N–1, N–2, N–3, and N–8—infringe plaintiff's copyrights. No lengthy list of similarities and differences is necessary to justify this finding.[35] It suffices to say that these items are strikingly similar in their essential features: a red apple pin; the words "I Like You" printed one above each other in gold on the upper portion of the apple where a bite was presumably taken from the apple; a gold border; a smooth enamel finish; and raised bars beneath the enamel finish evidently representing the reflection of light. The similarity of these features is immediately apparent and overshadows the differences between the plaintiff's and Nu-Style's products, which are discernible only upon closer examination. The similarities are such that the overall aesthetic effect is the same. In addition, the court finds that Exhibits N–4 (the cherry) and N–11 (the strawberry) infringe plaintiff's copyrights. While the fruits differ, their shape, color, and other essential features are so similar to plaintiff's design that the overall effect is the same.

Nu-Style's other items contain many of the same features as are present in plaintiff's apple jewelry. But the court finds in those other items sufficient distinguishing features—primarily shape and color—to warrant the withholding of a preliminary injunction against their manufacture and distribution.

*Trademark and Unfair Competition Claims:* In addition to its copyright claims, plaintiff asserts claims of unfair competition for infringement of its common law trademark, use of its unique dress of goods, and palming off. As to these common law claims, plaintiff is entitled to relief only upon a basic showing that certain nonessential elements of its products are so distinctive that they have become or will become [36] associated

33. Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir. 1966) and cases cited therein.

34. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d at 489; United Merchants and Mfrs., Inc. v. Sutton, 282 F.Supp. 588, 590 (S.D.N.Y.1967).

35. Fristot v. First American Natural Ferns Co., 251 F.Supp. 886, 888 (S.D.N.Y.1966).

36. *See, e. g.,* Edward G. Budd Mfg. Co. v. C. R. Wilson Body Co., 7 F.2d 746, 748–49 (E.D.Mich., S.D.1925), aff'd, 21 F.2d 803 (1927); Hemingway v. Film Alliance, 174 Misc. 725, 21 N.Y.S.2d 827 (1940); 3 Call-

in the public mind as identifying a particular manufacturer who thereby has earned a good will right thereto.[37] While there may be some confusion between plaintiff's and defendants' jewelry, there is no showing at this stage of the proceeding that the public has or will come to know and recognize products bearing the claimed design as those put out by the plaintiff. Indeed, the evidence so far presented provides no basis for an affirmative answer to "[t]he critical question of fact . . . whether the public is moved in any degree to buy the article because of its source." [38]

Put another way, plaintiff has not made a sufficient showing that the copied elements of its design are "nonfunctional" elements or mere indicia of origin, which may not be imitated, rather than "functional" elements, which contribute directly to the general sale of the product, and which may be freely copied.[39] A potential buyer of one of plaintiff's or defendants' items may be more motivated by the item's design and aesthetic features than by its source. And if this is so, those aesthetic features would be functional elements and could therefore be appropriated.[40] Plaintiff's showing in this regard is insufficient to warrant preliminary injunctive relief.[41]

In sum, defendant Nu-Style's motions to dismiss and to transfer are denied;

plaintiff's motion for a preliminary injunction is granted only to the extent that the defendants are preliminarily enjoined from manufacturing and distributing Exhibits N–1, N–2, N–3, N–4, N–8, N–11, and any other costume jewelry embodying the designs of those exhibits.

mann, Unfair Competition, Trademarks and Monopolies § 77.3, at 356–57 (1967).

37. *See, e. g.,* G. B. Kent & Sons, Ltd. v. P. Lorillard Co., 114 F.Supp. 621 (S.D.N.Y. 1953), aff'd on opinion below, 210 F.2d 953 (2d Cir. 1954).

38. Crescent Tool Co. v. Killborn & Bishop Co., 247 F. 299, 300 (2d Cir. 1917).

39. *See* Application of Deister Concentrator Co., 289 F.2d 496 (C.C.P.A.1961) ; American-Marietta Co. v. Krigsman, 275 F.2d 287, 289 (2d Cir. 1960) ; Speedry Prods., Inc. v. Dri Mark Prods., Inc., 271 F.2d 646, 648 (2d Cir. 1959) ; West Point Mfg. Co. v. Detroit Stamping Co., 222 F.2d 581, 591 (6th Cir.), cert. denied, 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749 (1955) ; J. C. Penney Co. v.

H. D. Lee Mercantile Co., 120 F.2d 949, 954 (8th Cir. 1941) ; Lovell-McConnell Mfg. Co. v. American Ever-Ready Co., 195 F. 931 (2d Cir. 1912).

40. *See* Pagliero v. Wallace China Co., 198 F.2d 339 (9th Cir. 1952) ; Cheney Bros. v. Doris Silk Corp., 35 F.2d 279 (2d Cir. 1929) ; Zippo Mfg. Co. v. Rogers Imports, Inc., 216 F.Supp. 670, 691–94 (S.D.N.Y. 1963) ; Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N.E. 667 (1901).

41. *See also* Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) ; Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).