**DAMN I'M GOOD INC., Plaintiff,**

v.

**SAKOWITZ, INC., Defendant.**

**DAMN I'M GOOD INC., Plaintiff,**

v.

**HANOVER HOUSE INDUSTRIES, INC., Defendant.**

**Nos. 80 Civ. 1935, 80 Civ. 2369.**

United States District Court,
S. D. New York.

June 4, 1981.

---

Yuter, Rosen & Dainow, New York City, for plaintiff; S. C. Yuter, New York City, of counsel.

Nims, Howes, Collison & Isner, New York City, for defendant Sakowitz, Inc.; Ralph Henkle, New York City, of counsel.

Schupak, Rosenfeld, Fischbein, Bernstein & Tannenhauser, New York City, for defendant Hanover House Industries, Inc.

Ira H. Zuckerman, New York and Cushman, Darby & Cushman, Washington, D. C., for Damn I'm Good Inc.; Edward M. Prince, Washington, D. C., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, alleging it is the owner of the common law trademark DAMN I'M GOOD for jewelry and other items, brought this action charging the defendants with trademark infringement under § 43(a) of the Lanham Act[1] and the common law, unfair competition, and dilution of trademark under § 368–d of the New York General Business Law. The defendants, Sakowitz, Inc. and Hanover House Industries, Inc., move for summary judgment solely on the issue of the validity of plaintiff's alleged trademark. Plaintiff cross-moves for partial summary judgment on the ground that it has a valid trademark and to enjoin the defendants from infringing this mark by advertising, distributing or selling their goods under the mark DAMN I'M GOOD. The parties agree that the record is ripe for summary resolution of the validity issue, although defendants contend that in the event plaintiff's alleged mark should be found valid, then material, disputed issues of fact prevent summary resolution of the infringement issues. Because the Court finds that plaintiff's mark is not valid, defendants' motion is granted and plaintiff's cross-motion is denied.

Plaintiff, Damn I'm Good Inc., has for the past five years been in the mail order business selling bracelets inscribed across their face in large capital letters with the

---

1. 15 U.S.C. § 1125(a).

phrase DAMN I'M GOOD, or with up to 48 other messages, including GOSH I'M GREAT, I'M EXPENSIVE and I'M THE BOSS.[2] The bracelets are smooth-surfaced with a high-gloss finish, approximately ¾ inches in width, flexible to fit all sized wrists, and may be purchased in brass or copper, and at one time in sterling silver or 14-karat gold. As of May 1980, plaintiff also sells pendants, umbrellas and gold ball markers inscribed with the DAMN I'M GOOD phrase. Plaintiff was established by Dionne Cole, the designer of the bracelet and plaintiff's president, who has assigned all rights in the alleged trademark to plaintiff. Beginning in December 1978, defendant Sakowitz, Inc., a former major retailer of plaintiff's bracelets, sold money clips, ties, bath towels and bath rugs of its own manufacture bearing the phrase DAMN I'M GOOD. Beginning in its Christmas 1979 catalog, defendant Hanover House Industries, Inc. sold bracelets that appear similar to those of plaintiff which also bear the DAMN I'M GOOD inscription.

The threshold, and in this case determinative, issue is whether plaintiff possesses a valid trademark in the phrase DAMN I'M GOOD. In contending that it holds a valid trademark, plaintiff stresses primarily that an application to the United States Patent and Trademark Office for registration of its mark DAMN I'M GOOD on the principal register was allowed for jewelry.[3] The determination was published for opposition on September 30, 1980 and both defendants have filed oppositions. The matter is still pending before the Trademark Appeals Board.

However, this allowance was preceded in January 1979 by the rejection of a prior application to the Patent and Trademark Office for registration of this same mark. The rationale advanced by the Trademark Examiner at the time was that plaintiff's mark "appears to be in the nature of an ornamental design and, as such, does not serve the purpose of indicating origin of the goods in [plaintiff]." One year later, in response to a communication from plaintiff's attorney, the Examiner elaborated on his ruling that the phrase DAMN I'M GOOD was ornamental. Citing two Trademark Appeals Board decisions, *In re Expo*[4] and *In re Olin*,[5] the Examiner explained that "[a] mark which induces the purchaser to buy because it is aesthetically pleasing rather than being *primarily a source indicator* is ornamental in nature and is refused registration on the Principal Register." (emphasis added)

Since April 1980, at the Examiner's suggestion, plaintiff has attached to its bracelets small cardboard tags bearing its name, Damn I'm Good Inc. One side of these tags contains the words

DAMN I'M GOOD
by Dionne Cole

and the other side reads

Creative Products
Div. of Damn I'm Good Inc.
© 1976 Damn I'm Good Inc.

The Examiner's allowance of plaintiff's re-application was based on this use of tags. Even the actual registration of a trademark on the principal register, however, which this case does not present, is only prima facie evidence of a trademark's validity that may be rebutted in a collateral enforcement proceeding.[6]

Plaintiff contends that a mark should be registrable as a trademark whether or not

2. Other messages offered at various times by plaintiff include FIRST CLASS, PRICELESS, I CAN TYPE, SWINGER, I LOVE MY DOG, I LOVE MY WIFE, I LOVE MY POODLE, I LOVE MY CHOCOLATE, I LOVE MY DIET, I LOVE WASHINGTON, I LOVE TENNIS, I LOVE JUNK FOOD, I LOVE JOGGING, I LOVE MY COFFEE BREAK, I LOVE MY ICE CREAM and I LOVE MY ROLLS ROYCE.

3. *See* 15 U.S.C. § 1052 (detailing trademarks registrable on principal register).

4. 189 U.S.P.Q. 48 (TTAB 1975).

5. 181 U.S.P.Q. 182 (TTAB 1973).

6. 15 U.S.C. § 1115(a); *see Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 779 (2d Cir. 1964); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 542 (2d Cir. 1956); *Cartier, Inc. v. Three Sheaves Co.*, 465 F.Supp. 123, 127–28 (S.D.N.Y.1979).

it is primarily aesthetically pleasing, unless it is without any meaning as a source indicator and is "mere ornamentation."[7] It argues that, despite the Examiner's citation of *Expo* and *Olin*, there is no basis in either of these opinions for the test of registrability he articulated that the mark serve "primarily" as a source indicator. Defendants, on the other hand, contend that the Examiner's allowance of plaintiff's application for the phrase DAMN I'M GOOD was erroneous because the phrase is an important component of the commercial success of the bracelets and thus is a functional item that is inappropriate for trademark protection. Defendants also contend that plaintiff never promoted the phrase DAMN I'M GOOD as an indicator of source but only as a message on its bracelets.

■ To prevail on its trademark infringement or unfair competition claim, plaintiff must show, among other things, that the features allegedly copied by defendants are nonfunctional.[8] When the features sought to be protected are functional there is normally no right to relief.[9] A particular feature is functional if it connotes other than a trademark purpose, that is, if it is an important ingredient in the commercial success of the product.[10] In the absence of a patent or copyright, the inter-

est in free competition permits imitation of a feature that contributes directly to the general sale of that product.[11] On the other hand, when the feature is a "mere arbitrary embellishment . . . primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product," and when the requisite showing of secondary meaning is made, then imitation can be forbidden without hindering effective competition and trademark protection can be extended.[12] Thus, if a potential buyer is motivated by the inscription of DAMN I'M GOOD primarily as an aesthetic feature rather than as an indicator of the bracelet's source, then this feature is functional and may be freely appropriated by others.[13]

■ At least until April 1980 when plaintiff began affixing tags to its bracelets, the phrase DAMN I'M GOOD served no role in identifying the source of the bracelet. An advertisement appearing in *The New Yorker* magazine beginning in October 1977,[14] which also was used as a retail display card, attached to order blanks, and inserted in boxes with the bracelets, bore no mention of Damn I'm Good Inc. as the source of the bracelet. The bottom of the ad indicated that the bracelet was "by Dionne Cole," and

7. *In re Olin*, 181 U.S.P.Q. 182, 182 (TTAB 1973). In support of its position, plaintiff also cites *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979), and *In re Penthouse Int'l Ltd.*, 565 F.2d 679 (CCPA 1977).

8. *See Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 606 (S.D.N.Y.1979).

9. *Ives Laboratories v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 606 (S.D.N.Y.1979).

10. *Ives Laboratories v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 606–07 (S.D.N.Y.1979); *see* 15 U.S.C. § 1127 (A trademark is "any word . . . adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others.")

11. *Ives Laboratories v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979); *Truck Equip.*

Serv. Co. v. Fruehauf Corp., 536 F.2d 1210, 1218 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 607 (S.D.N.Y.1979); *PPS, Inc. v. Jewelry Sales Rep., Inc.*, 392 F.Supp. 375, 384 (S.D.N.Y. 1975).

12. *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 607 (S.D.N.Y.1979) (quoting *Ives Laboratories v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979)) (quoting *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952)).

13. *Ives Laboratories v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 607 (S.D.N.Y.1979); *PPS, Inc. v. Jewelry Sales Rep., Inc.*, 392 F.Supp. 375, 384 (S.D.N.Y.1975).

14. Plaintiff's advertising of its bracelets was quite limited.

the company listed to which mail orders were to be sent was Creative Products, Inc. The ad contained the words DAMN I'M GOOD only as engraved on the bracelet, which was pictured in a photograph, and thus promoted the phrase as a message on the bracelet rather than as the bracelet's source. While plaintiff now contends that Creative Products, Inc. is a division of Damn I'm Good Inc., the ad gave no indication of this and thus failed to present Damn I'm Good Inc. to the public as the source of the bracelets. Moreover, although plaintiff claims that Dionne Cole assigned to it all her rights in the phrase DAMN I'M GOOD, this assignment cannot confer trademark status to the phrase when, as noted, it was never presented publicly as the source of the bracelets.

A second version of this ad, which first appeared in early 1978, had written vertically in small letters along the lower left border the copyright symbol "© 1978 by Damn I'm Good, Inc." However, plaintiff concedes that DAMN I'M GOOD is not copyrightable because it is lacking in sculptural authorship when applied to an unadorned bracelet and because it is a short phrase.[15] Moreover, even if plaintiff were assumed to hold a copyright in the phrase DAMN I'M GOOD, its use of the phrase accompanied by a copyright symbol does not indicate to the public that the bracelets originated with plaintiff.

Ads placed in newspapers around the country throughout 1977 that were submitted to the Court indicate a similar failure to employ the phrase DAMN I'M GOOD as a source of origin. Each ad announced that the bracelets were created by Dionne Cole and pictured a bracelet inscribed with DAMN I'M GOOD, although in some a bracelet inscribed with I'M EXPENSIVE was also shown. In no place other than its location on the bracelets in these photographs did the phrase DAMN I'M GOOD appear in these ads. Again, the phrase is presented as a message rather than as the name of a source.

Indeed, even the order forms sent by plaintiff to retail stores never mention DAMN I'M GOOD as the source of the bracelets. One order form is printed on the letterhead stationery of Dionne Cole Inc., and mentions DAMN I'M GOOD only as a message: the phrase is pictured inscribed on a bracelet alongside a bracelet inscribed with I'M EXPENSIVE and is also placed on a list of seven different messages from which retail stores can select inscriptions for the bracelets they order. Another order form also shows the phrase DAMN I'M GOOD only as a message: the phrase again is pictured inscribed on a bracelet and is listed among fourteen different messages from which retailers can choose inscriptions. Once more, Dionne Cole Inc. stationery is used, indicating that it rather than Damn I'm Good Inc. is the source of the bracelets. Plaintiff does not here claim a trademark in the name Dionne Cole.

Moreover, there is no evidence that customers perceived the phrase DAMN I'M GOOD to reflect the source of the bracelets. Although two letters from customers requesting "DAMN I'M GOOD bracelets" were submitted to the Court, only one of these is addressed and it is addressed to Creative Products. At best, therefore, these letters evidence only a popular generic description of the bracelets. Even an article in the "Discoveries" column of *The New York Times*, which was attached to some of the order blanks, describes the bracelet only as "inscribed with 'DAMN I'M GOOD'" but as "made by Dionne Cole Inc."

Therefore, it was not until the tags were placed on the bracelets beginning in April 1980, a full sixteen months after Sakowitz and four months after Hanover House began manufacturing products inscribed with DAMN I'M GOOD, that plaintiff began using the phrase DAMN I'M GOOD to indicate the source of its bracelets. This last-ditch attempt to overcome the prior use of the phrase by other parties and the previous adverse ruling by the Trademark Commission is insufficient to establish that the phrase DAMN I'M GOOD has been used

---

**15.** Plaintiff's Statement pursuant to S.D.N.Y. General Rule 9(g), ¶ 39.

consistently by plaintiff to identify the source of the bracelets. Rather, the evidence clearly demonstrates that while various entities were publicly identified as the source of plaintiff's bracelets, from Creative Products to Dionne Cole to Dionne Cole Inc., neither DAMN I'M GOOD nor Damn I'm Good Inc. was among them. It thus appears that in the history of plaintiff's bracelet, the role played by the phrase DAMN I'M GOOD in identifying the source of the bracelet is small if any. Since "[t]here is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed" and "the right to a particular mark grows out of its use [to designate the product of a particular trader], not its mere adoption," [16] plaintiff's limited use of the phrase DAMN I'M GOOD as the source of origin of its products makes a very weak case for according this phrase trademark protection.

By contrast to this minimal identifying role, the phrase's aesthetic appeal has been large. There can be no dispute that the primary appeal of plaintiff's bracelets is the message inscribed on them. With all due respect to the craftsmanship and quality of the bracelets on which plaintiff engraves messages, the bracelets themselves are quite common and undistinctive. Indeed, examined alongside the inscriptions they sport, the bracelets appear rather ordinary.

It thus is apparent that a customer ordering a bracelet inscribed with DAMN I'M GOOD or any other message does so primarily because of the message and not because of the underlying piece of jewelry.[17] A seeker of "ego-boosting" would find his quest quite unfulfilled by a bracelet lacking the DAMN I'M GOOD inscription. While plaintiff attempts to show that the underlying bracelet and not the inscribed message is the primary appeal of its product by claiming that its bracelet "can be worn unadorned as jewelry," there is no evidence in the record of a single such purchase; the invoices submitted to the Court indicate that the bracelets purchased, without exception, were inscribed with one of plaintiff's messages. The DAMN I'M GOOD inscription thus is a crucial ingredient in the commercial success of plaintiff's product, independent of any source-identifying function it might serve, and thus is a functional feature of the bracelet.[18] Competition in bracelets or other goods inscribed with this or other messages would be severely curtailed if manufacturers could receive trademark protection for each message they devised.[19] Indeed, on the argument of these motions, plaintiff's counsel contended and his client in her deposition affirmed that plaintiff has exclusive rights in the words DAMN I'M GOOD regardless of the product to which these words are applied—a sweeping claim that would preempt, if not monopolize, the

**16.** *United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141 (1918); *see American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 663 (2d Cir. 1979); *Information Clearing House Inc. v. Find Magazine,* 492 F.Supp. 147, 163 (S.D.N.Y.1980).

**17.** *Cf. PPS, Inc. v. Jewelry Sales Rep., Inc.,* 392 F.Supp. 375, 383–84 (S.D.N.Y.1975). Indeed, in its motion papers, plaintiff even admits that "[t]he words 'DAMN I'M GOOD' are an important ingredient in the commercial success of [its] product," although at oral argument it sought to escape the legal implications of this statement by arguing that even as a source indicator the DAMN I'M GOOD phrase would be such an important ingredient.

**18.** *Ives Laboratories v. Darby Drug Co.,* 601 F.2d 631, 643 (2d Cir. 1979); *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602,

607 (S.D.N.Y.1979). Although plaintiff cites to the contrary an order enforcing a trademark in TRY GOD, which apparently had been inscribed on a plain silver pendant but was not otherwise used to identify the source of the pendant, *Tiffany & Co. v. Glen Co.,* 78 Civ. 4373 (S.D.N.Y. Oct. 12, 1978), this order was issued by consent and thus has no precedential value.

**19.** *See Ives Laboratories v. Darby Drug Co.,* 601 F.2d 631, 643 (2d Cir. 1979); *Truck Equip. Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1218 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 607 (S.D.N.Y.1979); *PPS, Inc. v. Jewelry Sales Rep., Inc.,* 392 F.Supp. 375, 384 (S.D.N.Y. 1975).

phrase solely in plaintiff's favor.[20] Moreover, in light of the insignificant role that the phrase DAMN I'M GOOD has played in identifying the source of plaintiff's bracelets, it has not served primarily as a source indicator and thus cannot meet the test for trademark protection.[21]

Accordingly, plaintiff does not hold a valid trademark in the phrase DAMN I'M GOOD. The infringement and dilution claims thus must fail. Since a functional feature also cannot serve as the basis of an unfair competition claim,[22] this claim too must be dismissed. Defendants' motion thus is granted and plaintiff's cross-motion is denied.

So ordered.

---

20. Deposition of Dionne Cole, p. 110. Such preclusive use of a mark is not sanctioned by trademark law. *See Information Clearing House, Inc. v. Find Magazine*, 492 F.Supp. 147, 164 (S.D.N.Y.1980).

21. *Ives Laboratories v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 607 (S.D.N.Y.1979); *cf. American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 663 (2d Cir. 1979). By contrast, placement of a recognized trademark on, for example, a T-shirt, might serve primarily as an indicator of source despite its functional component. *See In re Expo*, 189 U.S.P.Q. 48 (TTAB 1975); *In re Olin*, 181 U.S.P.Q. 182 (TTAB 1973); *cf. In re*

*Penthouse Int'l Ltd.*, 565 F.2d 679 (CCPA 1977). Similarly, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979), cited by plaintiff, is readily distinguishable on its facts from the case at hand since there the uniform in question was widely publicized and recognized as belonging to the Dallas Cowboys Cheerleaders.

22. *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 606 (S.D.N.Y.1979); *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 694–95 (S.D.N.Y.1963); *cf. PPS, Inc. v. Jewelry Sales Rep., Inc.*, 392 F.Supp. 375, 383–84 (S.D.N.Y.1975).