**Ray M. DOLBY, et al., Plaintiffs,**

v.

**Thomas Morgan ROBERTSON, a/k/a Thomas Dolby, Defendant.**

No. C–86–4907 SC.

United States District Court, N.D. California.

Nov. 5, 1986.

816

Thomas A. Gallagher, Michael Rainey, Majestic, Gallagher, Parsons & Siebert, San Francisco, Cal., for plaintiffs.

Nathan Lane III, Graham & James, San Francisco, Cal., for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

CONTI, District Judge.

Plaintiffs Ray M. Dolby and Dolby Laboratories complain that defendant Thomas Morgan Robertson has unfairly assumed the stage name "Thomas Dolby". Plaintiffs have moved for a preliminary injunction. On October 8, 1986, the court denied plaintiffs' motion for lack of jurisdiction. The matter is before the court on plaintiffs' motion for reconsideration.

The court may enter a preliminary injunction if: (1) the movants have established a strong likelihood of success on the merits; (2) the balance of irreparable harm favors the injunction; and (3) the public interest favors the injunction. *People of Village of Gambell v. Hodel*, 774 F.2d 1414, 1419 (9th Cir.1985). Since this is a preliminary stage in the case, the court should resolve doubts in favor of denying the injunction.

Plaintiffs seek to enjoin defendant from using the name "Thomas Dolby" in making music for motion pictures. The court determines that this injunction is too harsh. The terms of a final injunction—if any—will depend on defendant's intent and other matters to be proved at trial. At this preliminary stage, the court will consider only a narrow injunction.

The court determines that the name "Thomas Dolby" is not likely to confuse consumers in a way that will harm plaintiffs. Therefore the court determines that defendant may continue to use the name "Thomas Dolby" in all his performing activities. The court determines, however, that the surname "Dolby" alone is likely to increase confusion. Therefore the court determines that defendant may not use the surname "Dolby" alone.

## A. THE PARTIES

Plaintiff Ray Dolby invented a process of noise reduction which allowed cassette tapes to attain high fidelity. Ray Dolby founded Dolby Laboratories, Inc. in 1965. Dolby Laboratories and a subsidiary created the Dolby trademark. Since 1968, most manufacturers of consumer electronic equipment have obtained licenses to use Dolby technology identified by the Dolby trademark. Over 140 million audio cassette and videocassette recorders and players have been sold bearing the Dolby trademark, along with hundreds of millions of cassettes. In addition, over one thousand motion pictures have been produced in Dolby Stereo. This year the Dolby entities may earn a gross income of $27 million.

Defendant Thomas Morgan Robertson was born in 1958 in London. He is a British citizen. Defendant composes and performs popular music, largely on the synthesizer. Defendant performed his first professional concert in 1973. In 1980 he began a solo career. Since 1981 he has made his living in the popular music field. His recordings have sold over two million copies. He has been involved in music videos since 1981. He has appeared on television and has made music for films. The first such film, "Fever Pitch", was released in November 1985.

Defendant used the name "Thomas Dolby" when he signed his first recording contract in 1981. Defendant has used this stage name ever since. Followers of popu-

lar music know defendant by this name, and not by the name Thomas Morgan Robertson.

Plaintiffs assert that defendant chose the name "Thomas Dolby" in order to cash in on the image of Dolby Stereo as a leader in sound technology. Defendant claims that "Thomas Dolby" is his childhood nickname.

My name by birth was Thomas Morgan Robertson. When I was at school, my schoolfriends nicknamed me "Thomas Dolby" and by the age of 14, all my friends knew me as Thomas Dolby.... I hold a personal bank account in the name Thomas Dolby and correspond both professionally and personally as Thomas Dolby.

Throughout my school career and afterwards, I continued to be known by friends as Thomas Dolby. As I broke into the popular entertainment industry I was still known as Thomas Dolby and it did not seriously occur to me to use any other name.... I felt Thomas Dolby was a distinctive name like "David Bowie", "Stevie Wonder" and "Ringo Starr" which were names adopted by performers in an effort to individualize their public personae. I also recall that there was a successful performer at the time known as "Tom Robinson" and if I had called myself "Thomas Robertson" there might have been some confusion. It was never my intention to associate myself with the Plaintiffs. I did not believe then and do not believe now that there was any possibility that I would be confused with any of the plaintiffs in this case, and I certainly had no intention of taking advantage of any public recognition that their names might have had.

Declaration of Thomas Dolby, ¶¶ 3, 4. Two friends of defendant declare that he has been known by the nickname "Thomas Dolby" since he was fourteen. Declaration of John Solomon; Declaration of Lesley Fairbairn.

Plaintiffs argue that defendant acquired the nickname "Dolby" in school because he was always "messing around" with tape recorders. Second Jasper Declaration, ¶ 10. At that time Dolby noise reduction products were already widespread. Plaintiffs argue that defendant's nickname is itself a play on the Dolby trademark.

At this stage the court cannot determine why defendant chose the stage name "Thomas Dolby".

**B. THE PROPOSED INJUNCTION**

Plaintiffs have brought this action in response to the success of the recent film "Howard the Duck". Defendant composed the music for "Howard the Duck". In advertisements for the movie, the name "Thomas Dolby" appears near the "Dolby Stereo" trademark. Plaintiffs argue that this confuses consumers. Defendant recently composed the soundtrack for the film "Gothic", which is now being mixed. Plaintiffs do not want the credits for that soundtrack to carry the name "Thomas Dolby".

Defendant has completed his activities on the film "Gothic". Defendant argues that he no longer has any right to prevent the filmmakers from using the name "Thomas Dolby" in the credits. The court determines that it may be necessary for plaintiffs to join third parties in order to enforce an injunction. Nonetheless, the court determines that it may consider an injunction at this time.

Plaintiffs assert that an injunction is proper at this time because defendant has only recently moved into the field of motion pictures. Plaintiffs argue that "motion picture involvement provides significantly more public exposure than records and music videos." Plaintiffs' Reply Memorandum, p. 7. Defendant asserts that he has a longstanding involvement in video generally. The court determines that defendant's activities are relatively recent, and that the court may consider an injunction at this time.

Plaintiffs submitted a proposed injunction in advance of oral argument. The proposed injunction would apply broadly to three areas of defendant's activities: (a) recordings, (b) motion pictures, and (c) promotion of sound equipment. The proposed

injunction would bar defendant from using the surname "Dolby" alone.

(A) In recordings, the proposed injunction would permit defendant to use the name "Thomas Dolby", but not the surname "Dolby" alone.

(B) In motion pictures, the proposed injunction would bar defendant from using even the name "Thomas Dolby".

(C) In the promotion of sound recording equipment, the proposed injunction would bar defendant from using even the name "Thomas Dolby".

Plaintiffs have specified that the proposed injunction would apply only to defendant's activities in the United States, and that it would have only prospective effect.

In their memoranda, plaintiffs claimed that defendant had conceded parts A and C of the proposed injunction. At a meeting on August 26, 1986, defendant stated:

(a) That he had no intention of endorsing any audio equipment again in the foreseeable future.

(b) That he had no intention of using the appellation "Dolby's Cube" for any of his records.

(c) He considered it sensible in the circumstances to perform his work only under the full name of "Thomas Dolby".

Declaration of F.G. Presland, ¶ 3. Nonetheless, defendant does not concede that an injunction should issue on these points.

## C. JURISDICTION

At oral argument on October 3, 1986, plaintiffs represented that the only disputed issue concerned defendant's work on the film "Gothic". "Gothic" is being produced in England. Defendant composed and performed the soundtrack for "Gothic". The credits will likely state, "Music composed by Thomas Dolby." Second Declaration of Andrew Ferguson, ¶ 5. "Gothic" is to be released in England in November 1986. At oral argument on October 3, 1986, plaintiffs offered no evidence that the film would be released in the United States.

Plaintiffs have now supplied evidence that "Gothic" will be released in the United States. Plaintiffs have put forward several American advertisements for the film. The court infers from these advertisements that a U.S. release date has not yet been set. Stephen Navin declares that "Gothic" will not be released in the U.S. prior to March or April 1987. Second Declaration of Stephen Navin, ¶ 4. Trial in this matter is set in March 1987.

Plaintiffs have made it clear since the October 3 hearing that they wish to enter all three parts of the proposed injunction. Defendant has made it clear that he does not concede any portion of the injunction. The court will now consider the entire proposed injunction.

■ Although defendant is a British citizen, the court clearly does have jurisdiction to enjoin his activities in the United States. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 (9th Cir. 1977). Plaintiffs state that they seek to enjoin only defendant's activities in the United States. Defendant maintains that his activities in connection with the film "Gothic" take place in England, not in the United States. Therefore, he argues, the central portion of the proposed injunction is a nullity. The dispute on this point is a matter of semantics. Although plaintiffs do not state this expressly, plaintiffs clearly mean to enjoin the *advertisement and sale* of defendant's performances, where advertisement and sale take place in the United States. Plaintiffs wish to control how defendant's name appears before the American public. Defendant argues that he *performs* his music primarily in Britain, but this argument misses the thrust of the injunction. The culpable conduct is not the act of singing or playing the synthesizer; the culpable conduct is misleading commercial use of the name "Dolby".

The Ninth Circuit has stated that: "[T]he extraterritorial coverage of the Lanham Act should be gauged not so much by the locus of the activity sought to be reached ... as by the nature of its effect on that commerce which Congress may regulate."

*Wells Fargo,* 556 F.2d at 428. This court clearly has jurisdiction under the Ninth Circuit's approach. Defendant records primarily in England, but markets his recordings extensively in the United States. Thus he intends his work to have a significant impact on United States commerce. This court may enjoin trademark violations in defendant's work where these violations reach the United States. Although the court does not have jurisdiction to enjoin defendant's use of the name "Dolby" on advertisements in England, the court does have jurisdiction to enjoin defendant's use of the name "Dolby" on advertisements in the United States.

The proposed injunction will affect only defendant's activities in the United States. Thus the court need not consider the "jurisdictional rule of reason" test for extraterritorial effect. *See Timberlane Lbr. Co. v. Bank of America, N.T. & S.A.,* 549 F.2d 597 (9th Cir.1976); *Timberlane Lumber Co. v. Bank of America,* 749 F.2d 1378 (9th Cir.1984).

Defendant has completed his work on the film "Gothic". Defendant worked on this film in Britain. Nonetheless, defendant must comply with the injunction if he has control of the film's American release. Defendant claims that he cannot control the way his name appears in the credits and in advertisements. If this is true, then the proposed injunction will not automatically reach the film "Gothic". Atlantic Releasing or another third party may bring the film "Gothic" to the United States. Third Declaration of Stephen Navin. In order to reach the film "Gothic", plaintiffs may need to join Atlantic Releasing or another third party. The court does not determine, at this stage, whether plaintiffs will succeed in enforcing the proposed injunction against Atlantic Releasing or any other third parties. Defendant certainly does have the power to control the use of his name under future contracts. Defendant will continue to market his work in the United States, and so the proposed injunction is not a nullity.

## D. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs have properly registered the trademark "Dolby". The registrations themselves are "conclusive evidence of the [plaintiff's] exclusive right to use the registered mark...." 15 U.S.C. § 1115(b). Defendant does not dispute plaintiffs' trademark, but contends that his use of the stage name "Thomas Dolby" does not infringe the trademark.

### 1. *Likelihood of confusion*

■ Plaintiffs have the burden to show that the public is likely to be confused by defendant's allegedly infringing use. *Toho Company, Ltd. v. Sears, Roebuck & Company,* 645 F.2d 788, 791 (9th Cir.1981). The "products" at issue here are related, but not competing. The Ninth Circuit has directed the courts to consider the following factors "in determining whether confusion between related goods is likely":

1. strength of the mark;
2. proximity of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. type of goods and the degree of care likely to be exercised by the purchaser;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of the product lines.

*AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979). The list is not exhaustive. *Id.* at 348, n. 11.

The court now reviews these eight factors.

(i) "A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses." *AMF,* 599 F.2d at 349. By this definition, the "Dolby Stereo" mark is not strong. The mark is very well known, however, and it probably carries a secondary meaning.

(ii) The name "Thomas Dolby" appears in close proximity to the Dolby Stereo trademark on record jackets and in movie advertisements.

(iii) The stage name "Dolby" and plaintiffs' trademark are identical. The stage name "Thomas Dolby" and plaintiff's trademark are distinct.

(iv) There is some anecdotal evidence of actual confusion. In addition, there is hearsay evidence of actual confusion.

> During the meeting of August 26th [1986], defendant admitted that in press interviews he was often asked if he was connected in any way with Dolby Labs.

Second Jaspar Declaration, ¶ 12.

(v) Defendant markets popular music; plaintiffs market sound technology and equipment that allow the listener to enjoy popular music. The marketing channels are related, but not the same.

(vi) Consumers of popular music are likely to exercise care as to the identity of the musician. Consumers are *not* likely to exercise care as to the musician's biography. Consumers are not likely to know whether the musician known as "Thomas Dolby" founded Dolby Laboratories.

Defendant has promoted sound equipment under the name "Thomas Dolby". Consumers of sound equipment are not likely to know whether "Thomas Dolby" founded Dolby Laboratories.

(vii) Plaintiffs argues that defendant chose the stage name "Thomas Dolby" in order to cash in on the Dolby Stereo trademark. Defendant denies this. The court cannot determine defendant's intent at this time.

(viii) Defendant is likely to continue his success in the field of recordings, and to increase his success in video media. Defendant states that he does not plan to promote sound equipment in the future. Absent an injunction, however, there is a reasonable likelihood that defendant will do so. In the mind of the music public, defendant is associated with sound technology.

Upon a review of the above factors, the court concludes that there is a likelihood of confusion. Consumers may believe that defendant founded Dolby Laboratories.

### 2. *Fair Use*

Defendant argues that he has merely used his own name to identify himself as a musical artist. He argues that this is not a trademark use.

Section 33(b) of the Lanham Act provides that an incontestable registration shall be:

> conclusive evidence of the registrant's exclusive right to use the registered mark ... except when ... (4) ... the use of the name ... charged to be an infringement is a use, otherwise than as a trade or service mark, of the party's individual name in his own business....

15 U.S.C. § 1115(b)(4). The courts prefer to allow an individual to use his own name in business, even if the name is trademarked. This permission is not absolute, however.

> It is well settled that a newcomer may be compelled to add some distinguishing words if he chooses to use even his own surname to conduct his business.

*S.C. Johnson & Son, Inc. v. Johnson,* 116 F.2d 427 (2d Cir.1940).

Plaintiffs argue that the fair use defense does not apply for several reasons. First, plaintiffs argue, "Thomas Dolby" is not defendant's given name, but his adopted name. The fair use defense does not extend to a name adopted solely to cash in on the senior trademark. *See, e.g., Societe Vinicole de Champagne v. Mumm,* 143 F.2d 240, 241 (2d Cir.1944).

Second, plaintiffs argue, defendant has used the name "Dolby" as a trade or service mark, because defendant has used the name in advertisements. *In re Polar Music International AB,* 714 F.2d 1567 (Fed. Cir.1983) held that the group name "ABBA" as used on records functions as a trademark for sound recordings.

The Seventh Circuit considered some of the same issues in *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153 (7th Cir.

1984), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361. The district court had denied a preliminary injunction. The district court found no likelihood of confusion between Hyatt Legal Services and the Hyatt Hotels chain. The Seventh Circuit upheld this result under the Lanham Act, because the district court's conclusion was not clearly erroneous. The Seventh Circuit went on, however, to enter a preliminary injunction under the Illinois Anti-Dilution Act.

The Seventh Circuit noted that of course one *can* trademark a proper name. The public knows the name "Hyatt Hotels" as a leading hotel chain; the name no longer means that the hotels are run by Mr. Hyatt. 736 F.2d at 1158. The Seventh Circuit granted an injunction, because the phrase "Hyatt Legal Services" does *not* show that "Hyatt" is a proper name. Thus the public might become confused between the 'Hyatt' of hotels and the 'Hyatt' of legal services. The Seventh Circuit required Hyatt Legal Services to choose a new name, which would make clear that the 'Hyatt' of legal services is a proper name. One permissible name would be "Joel Hyatt Legal Services".

In the present case, it is clear to the public that "Thomas Dolby" is proper name. Therefore defendant may continue to use the name "Thomas Dolby". On at least one occasion in the past, however, defendant used the name "Dolby's Cube". If defendant uses the surname "Dolby" alone in this fashion, defendant may unfairly confuse the public. Therefore defendant may not use the surname "Dolby" alone. The court determines that fair use is not a complete defense to a narrow injunction.

### 3. *Estoppel by acquiesence or laches*

On January 28, 1982, an attorney for plaintiffs wrote to defendant concerning this dispute. Defendant contends that by this letter plaintiffs acquiesced in defendant's use of the name "Thomas Dolby". The letter read as follows:

... I discovered that our legal advisors had somewhat overstepped the mark in their discussion with you with respect to Mr. Thomas Robertson's stage name of 'Thomas Dolby'. I have therefore instructed them to suspend their activities in this matter.

Nevertheless, our suspension of this action should not be interpreted as our condoning Mr. Robertson's choice of name. We still believe that it could be construed as an attempt to cash in on the good reputation of the trademark 'Dolby' and that people may be confused by an assumed connection between Mr. Robertson and us. We reserve the right to commence an action against Mr. Robertson if, in future, his activities are such as to bring the name 'Dolby' into disrepute or if he expands his activities into areas that impinge directly on those in which our trademark 'Dolby' is used.

Plaintiffs' Reply Memorandum, Appendix A. The letter clearly shows that plaintiffs did *not* acquiesce in defendant's use of the adopted name.

The letter *does* show that plaintiffs were aware of defendant's activity in 1981–82. Plaintiffs did not act again until they filed the present suit, in 1986. Defendants argue that the proposed injunction is barred by estoppel and laches.

█ In the letter, plaintiffs reserved their right to sue if defendant expanded his infringing activities. Plaintiffs argue that defendant has recently expanded his infringing activities: (1) in composing movie soundtracks; and (2) in promoting sound recording equipment. Given the clear reservation of rights in the letter, it was not reasonable for defendant to rely on plaintiffs' acquiescence. Therefore defendant does not make out a defense of estoppel.

The Ninth Circuit has held that laches rests in the discretion of the court.

Mere passage of time cannot constitute laches, but if the passage of time can be shown to have lulled defendant into a false sense of security, and the defendant acts in reliance thereon, laches may, in the discretion of the trial court, be found.

*Whitman v. Walt Disney Products, Inc.*, 263 F.2d 229 (9th Cir.1958). In *Friend v. H.A. Friend and Company*, 416 F.2d 526, 533 (9th Cir.1969), The Ninth Circuit struck down the defense of laches for lack of detrimental reliance. There, plaintiff had known of the infringing use for six years. In *Prudential Insurance Co. v. Gibraltar Financial Corp.*, 694 F.2d 1150 (9th Cir. 1982), the Ninth Circuit upheld a defense of laches. There, plaintiff had delayed *twenty-eight years* before suing.

■ Here, defendant's substantial motion picture activities have lasted only a year or so. In light of the letter of January 1982, defendant could not have reasonably relied on plaintiffs' acquiescence. Therefore defendant does not make out a defense of laches.

### 4. *Conclusion as to success on the merits*

Plaintiffs have preliminarily shown that they have an incontestable trademark, that defendant's use creates a likelihood of confusion, and that defendant has no complete defenses. Plaintiffs have shown that they are likely to win a narrow injunction on the merits. Defendant has shown that plaintiffs are not likely to win the full proposed injunction. The court now considers whether a narrow injunction is appropriate.

### E. IRREPARABLE HARM

Defendant claims that his career will be irreparably harmed if he is forced to give up the name "Thomas Dolby".

> Due to my success as a recording and performing artist, I am known to millions of people as Thomas Dolby. If I was made by the Court to succumb to the injunction in the terms of the proposed order, it would have an appalling effect on my career.

Declaration of Thomas Dolby, ¶ 13. The court agrees.

Plaintiffs claim that the "Dolby Stereo" trademark will be irreparably harmed if defendant continues to use the name "Thomas Dolby". Advertisements for the movie "Gothic" will carry the "Dolby Stereo" trademark near the statement "Music composed by Thomas Dolby". Consumers may mistakenly believe that "Thomas Dolby" founded Dolby Laboratories. Plaintiffs argue that loss of control over their reputation is sufficient to show irreparable harm. The court rejects this argument. *See Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719 (9th Cir.1985) (affirming *denial* of preliminary injunction).

Plaintiffs have adequately demonstrated *confusion*, but they have failed to demonstrate *harm*. Even if consumers mistakenly believe that "Thomas Dolby" founded Dolby Laboratories, this will not harm plaintiffs' trademark. The public knows the Dolby Stereo trademark and its reputation for sound enhancement technology. The public knows that "Thomas Dolby" is an individual musician. Even if "Thomas Dolby" markets poor music, the public will not think that plaintiffs' sound enhancement technology is at fault.

A letter put before the court confirms this view. On October 9, 1986, the President of Dolby Laboratories wrote to Virgin Films. Dolby Laboratories required Virgin Films to delete the name "Thomas Dolby" from the film "Gothic", or else to delete the Dolby Stereo trademark. Virgin Films responded as follows:

> There is simply no point in employing a well known musician for a film score and then modifying his name, which is what you are proposing, and I don't share your feeling that his name (as a composer) and yours (as a system) on the same film are going to belittle your trademark in any way.

Third Declaration of N.W. Jasper, Ex. B.

The court determines, on this motion for a preliminary injunction, that plaintiffs will not be harmed if defendant continues to use the name "Thomas Dolby" in making records and in making films.

On the other hand, the court determines that plaintiffs will be harmed if defendant uses the surname "Dolby" alone. The surname "Dolby" does not inform the public that the musician "Dolby" is an individual. Consumers might mistakenly believe that

Dolby Laboratories had begun to promote music. This could harm the reputation of "Dolby Stereo".

■ Likewise, the court determines that plaintiffs will be harmed if defendant uses the name "Thomas Dolby", without explanation, in promoting sound equipment. Consumers of sound equipment might mistakenly believe that "Thomas Dolby" founded Dolby Laboratories. If "Thomas Dolby" promoted equipment of inferior quality, this might harm plaintiffs' reputation. If defendant resumes his activities in promoting sound equipment, he should make clear that he is not connected with Dolby Laboratories. Then his activities will not harm the Dolby trademark.

## G. RESULT

■ The balance of equities favors a narrow injunction. On the one hand, defendant should not be allowed to cash in on the "Dolby" trademark. On the other hand, defendant should not be forced to lose the popular appeal he has gained under his stage name. The court frames a narrow injunction as follows.

1. Defendant may use the name "Thomas Dolby" on recordings and in his career as a musician, because he has developed this stage name. Defendant may not use the surname "Dolby" alone, because this would increase the likelihood of confusion. Defendant may not print the name in a way that will call attention to the surname "Dolby" at the expense of the first name "Thomas". For example, Defendant may write the name as "Thomas Dolby" or as "THOMAS DOLBY", but defendant may not write the name as "Thomas DOLBY".

2. Since defendant is permitted to use his stage name to produce music for recordings, defendant should also be permitted to use his stage name to produce music for films. Defendant may not do anything to intimate that he is responsible for the quality of the sound reproduction.

3. As a popular musician, defendant may develop a reputation for expertise in the area of music production generally. Therefore defendant should be free to promote sound equipment. There is substantial likelihood of confusion in this area, however. The court directs defendant to take measures to avert confusion. For example, defendant may use the phrase "Thomas Dolby (not affiliated with Dolby Labs)". The court orders that defendant may use his stage name in promoting sound equipment, so long as he clearly manifests that there is no connection between defendant and Dolby Laboratories.

4. The injunction applies only to defendant and parties in privity with him. Defendant cannot control how the press uses his stage name, for example. Defendant can and should arrange the proper use of his name in contracts with film studios and record companies.

5. The injunction grants only prospective relief.

6. The injunction applies only to defendant's activities in the United States.

## BOND

Plaintiffs shall post a bond in the amount of $50,000.

In accordance with the foregoing, it is hereby ordered that:

(1) defendant may use the name "Thomas Dolby" on recordings and in his career as a musician. Defendant may not use the surname "Dolby" alone. Defendant may not print the name in a way that draws attention to the surname "Dolby" at the expense of the first name "Thomas";

(2) defendant may use the name "Thomas Dolby" in connection with films, videocassettes, and soundtrack recordings on the same terms as (1) above. Defendant may not do anything to intimate that he is responsible for the quality of the sound reproduction;

(3) defendant may promote sound equipment only if defendant clearly manifests that there is no connection between defendant and Dolby Laboratories;

(4) this injunction applies only to defendant and parties in privity with him;

(5) this injunction grants only prospective relief;

(6) this injunction applies only to defendant's activities in the United States; and

(7) plaintiffs shall post a bond in the amount of $50,000.