**679**

Application of **PENTHOUSE
INTERNATIONAL LTD.**

No. 77–524.

United States Court of Customs
and Patent Appeals.

Nov. 10, 1977.

Stevan J. Bosses, New York City, Watson, Leavenworth, Kelton & Taggart, New York City, attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and LANE, Judges, and MORGAN FORD, Judge, United States Customs Court.

MARKEY, Chief Judge.

Appeal from a decision of the Trademark Trial and Appeal Board affirming the trademark examiner's final refusal to register applicant's mark. We reverse.

## Background

Appellant Penthouse International Ltd. (Penthouse) seeks to register on the Principle Register, for items of jewelry, including cuff links, tie fasteners, key rings, bracelets and pendants, in former U.S. Class 28, this stylized key logo:

Penthouse's parent application sought registration for goods in former U.S. Classes 22, 28, and 38. The parent application was split into two divisional applications. The application for puzzles in class 22 and posters in class 38 was published for opposition and registration No. 1,028,209 issued thereon. This appeal involves the divisional application.

Penthouse filed another application, serial No. 441,194, for registration of a mark comprising three of the present stylized key logos vertically aligned. The specimens there submitted were boxes bearing the mark. Registration No. 990,635 issued August 13, 1974 on that application. The goods there involved included jewelry charms bearing the triple key design.

The specimens in the present case were bracelets to which three-dimensional embodiments of the mark were affixed as charms. The examiner deemed the specimens incapable of showing trademark use and refused registration under § 2 of the Lanham Act, 15 U.S.C. § 1052, stating:

> [D]esigns of jewelry are considered to be functional in nature because it is the design of the jewelry that appeals to purchasers, and a particular piece of jewelry is purchased because of its design. Thus * * * the jewelry design would not be regarded as an indication of origin in applicant, but rather would be a design whose attractiveness and eye-appeal "sell" the goods. [Citation omitted.]

The Trademark Trial and Appeal Board (board), following the same reasoning, affirmed the examiner's refusal to register.

Citing In re Olin Corp., 181 USPQ 182 (TTAB 1973), Penthouse contends that ornamentation of a special nature which inherently signifies to purchasers the secondary source of the goods, rather than the source of manufacture, is registrable, even though it may also create a desire to pur-

chase. Penthouse also contends that there is no statutory basis for refusal to register, because the mark falls within the ambit of § 2's preamble, and no registration-precluding subsection applies.

## Issue

The issue is whether Penthouse is entitled to registration of its mark for the listed goods, when the submitted specimens are pendants in the form of a three-dimensional embodiment of the mark.

## OPINION

The statute, and much of the case law, relating to trademarks is oriented toward use of a mark in connection with goods which do not (and most could not) take the form of the mark. However, the Lanham Act nowhere excludes trademark registration in the circumstances of the present case. The definition section of the Act, § 45, 15 U.S.C. § 1127, defines "trademark" as including "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

In *In re McIlhenny Co.,* 278 F.2d 953, 955, 47 CCPA 985, 988, 126 USPQ 138, 140 (1960) a case involving registrability of a bottle configuration for the contents of the bottle, this court said:

Under the Lanham Act, "any word, name, symbol or device or any combination thereof" which is distinctive per se and identifies an applicant's goods and which does not fall within one of the prohibitions of section 2 is entitled to registration on the Principal Register, assuming, of course, procedural requirements are fulfilled. * * *

* * * * * *

* * * Without an applicant's fulfilling the requirements of section 2(f), registration on the Principal Register [under § 2] is only proper when the subject matter is a distinguishing and identifying trademark per se and obviously does identify the goods and distinguish them from the goods of others.

■ Registration was here refused because the mark was considered "functional" and therefore not capable of identifying the origin of jewelry. That view rests on Penthouse's decision to employ its mark as the design of its pendants, rather than "on" its pendants. If the pendant has a nontrademark function, the inquiry is not at an end; possession of a function and of a capability of indicating origin are not in every case mutually exclusive. Whether, as the solicitor argues, the "mark performs the function of the jewelry item" is not controlling where the mark also serves to indicate origin.

■ As this court said in *In re Deister Concentrator Co., Inc.,* 289 F.2d 496, 502–03, 48 CCPA 952, 963–65, 129 USPQ 314, 320–21 (1961):

A feature dictated solely by "functional" (utilitarian) considerations may not be protected as a trademark; but mere possession of a function (utility) is not sufficient reason to deny protection. * * *

* * * * * *

* * * [There is a] fundamental distinction . . . between "functional" shapes that are never capable of being monopolized, even when they become "distinctive of the applicant's goods," and shapes which can be monopolized because they are of such an arbitrary nature that the law does not recognize a right in the public to copy them, even if some incidental function is associated with them. Consider, for example, that the stitching in * * * [*In re Simmons Co.,* 278 F.2d 517, 47 CCPA 963, 126 USPQ 52 (1960)] is functional as stitching. The Lanham Act, * * * does not deal with this distinction.

Thus, if the key configuration was not dictated by " 'functional' considerations," as was the table shape in *Deister,* if it be distinctive per se and capable of identifying Penthouse's goods, its registration is proper.

■ The record shows that the stylized key design was chosen because Penthouse

was using it as a trademark on other products. With respect to those other products, the mark is unquestionably arbitrary and fanciful. With respect to jewelry in general the mark itself has no nontrademark meaning. That one of Penthouse's jewelry items takes the form of its trademark does not strip the mark itself of its arbitrary and fanciful characteristics.

■ Jewelry designs as such are not registrable. The present decision, however, is governed by a special fact of record. The design is the mark. Penthouse is not merely attempting to register a jewelry design as a trademark; it seeks to register its established mark used as a jewelry design. Hence the case is unlike that of *In re Honeywell,* Cust. & Pat.App., 532 F.2d 180, 189 USPQ 343 (1976), wherein the applicant sought to register a functional design of a thermostat, and cases involving configurations of the goods described in the application, such as *In re Minnesota Mining & Mfg. Co.,* 335 F.2d 836, 51 CCPA 1546, 142 USPQ 366 (1964) (application for Supplemental Register registration), or configurations of containers and packages, such as *In re World's Finest Chocolate, Inc.,* 474 F.2d 1012, 177 USPQ 205, CCPA (1973), and *In re Mogen David Wine Corp.,* 328 F.2d 925, 51 CCPA 1260, 140 USPQ 575 (1964).

The stylized key design in the present case may have the function of attracting purchasers, but the shape of the jewelry, like the mark, is arbitrary and nonessential to a functioning piece of jewelry. The "ornamentation function" basis of rejection, argued here by the solicitor, was summarily rejected by this court on a related issue in *Mogen David,* supra, and is without merit. "Ornamentation function" was given extensive treatment by Judge Rich in his concurring opinion:

> [There is] an essential distinction between engineering function and ornamentation function which should be recognized in passing on these cases which involve the policy question whether the public shall have freedom to copy or not. In *Deister,* for example, use of the diagonal shape

was essential to the enjoyment of the engineering advantages which brought it into being. (At least that was our assumption on the record.) In the instant case, even if we assume some value behind the specific design in an aesthetic sense, it is not in the least essential to use it in order to have a fully functioning bottle or an attractive bottle or even a bottle of the general type of the Mogen David bottle, whether or not considered to be a "decanter." (Our impression of decanters is that they vary as much in shape and design as wine and liquor bottles in general.)

> The Restatement appears to use the terms "functional" and "non-functional" as labels to denote the legal consequence: if the former, the public may copy; and if the latter, it may not. This is the way the "law" has been but it is not of much help in deciding cases. But going behind the labels to the bases for determining which to apply, we see, I believe, that depriving the public of the right to copy Mogen David's bottle in selling wines and related products (1) does *not* hinder competition and (2) does not take from the goods (bottled wine) something of *substantial* value. And that is because, within the rationale of the *Deister* case, the design of a wine bottle like the one here is of such an *arbitrary* nature that depriving the public of the right to copy it is insignificant, as a policy matter, in comparison with the vendor's right to protection from possible confusion in trade. [328 F.2d at 933, 51 CCPA at 1270, 140 USPQ at 581–82.]

■ Depriving the public of the right to copy the Penthouse key logo for jewelry (1) does not hinder competition and (2) does not take from the goods (jewelry) something of substantial value. Moreover, the present mark having already been used on and registered for other goods, the public is already prevented from making unauthorized copies of the mark in the form of a piece of jewelry.[1] Penthouse has the right to ex-

1. The solicitor argues that registration is not needed, because Penthouse is protected from

"confusing use" of the mark by others. The protection of Penthouse's property right in its

clude use by others of its mark on jewelry. What it now seeks is merely the registration of that right. No reason, in law or policy, exists for denying the registration sought.

 The solicitor argues that jewelry in the form of the mark would not indicate origin. The question, however, is whether the mark in the form of jewelry would indicate origin. It is undisputed that the mark as used on Penthouse's other products (including jewelry on which the mark is used in triplicate), is recognized as a trademark. That the mark has been registered for other products is prima facie evidence that it is capable of recognition as a trademark, and therefore of being regarded as an indication of origin. In the light of the record, it cannot be said that sales can result only from the attractiveness of the jewelry item, and that sales would not be triggered by recognition of the mark.

It is to be remembered that the present case arises only because of the particular specimens submitted by Penthouse. Had Penthouse submitted a box label, bearing the same mark and useful on boxes containing the pendant actually submitted, there would have apparently been no refusal to register.[2] The capacity of a mark to indicate origin is not destroyed because the mark appears as a charm on a bracelet, instead of as a symbol on the box which contains the bracelet.

The requirements for registration of the mark under the Lanham Act having been met in the present case, and there being no overriding policy reasons as in *Deister* for denying registration,[3] the decision of the board is *reversed*.

*REVERSED*

trademark, however, is not in this case limited solely to the presentation of "confusion." See Keating, *Patches on the Trademark Law*, 67 T.M.Rep. 315 (1977).

2. The examiner invited the submission of box or label specimens, similar to those submitted with Penthouse's application serial No. 441,-194, and indicated that such action would overcome the refusal to register. At oral argument, the solicitor stated that registration would be proper if a necessarily tiny copy of the mark were embossed or engraved somewhere on the pendant.

3. Whether copyright or design patent protection may be available to Penthouse is irrelevant. As this court has often said, copyright, patent and trademark laws stem from different concepts and offer different kinds of protection, which are not mutually exclusive.