**In re POLAR MUSIC INTERNATIONAL AB.**

**Appeal Nos. 83–501, 83–514.**

United States Court of Appeals, Federal Circuit.

Aug. 3, 1983.

Jerry E. Hyland, Indianapolis, Ind., argued for appellant.

Fred E. McKelvey, Arlington, Va., argued for appellee. With him on the brief was Joseph F. Nakamura, Sol., Washington, D.C.

Before BALDWIN, KASHIWA and SMITH, Circuit Judges.

KASHIWA, Circuit Judge.

This is a consolidated appeal from decisions of the Trademark Trial and Appeal Board (hereinafter board) sustaining the trademark examining attorney's refusals of two applications by appellant for registration on the principal register. It raises the issue whether the name and portrait of a musical group function as trademarks on sound recordings under the facts of this case. We hold that the specimens submitted to the Patent and Trademark Office fully evidence the trademark usage of the name of the musical group "ABBA" on such goods. We hold, however, that the portrait of the group, although potentially able to be registered as a trademark, has not been shown on the record before us to have been used as a trademark. The decision of the board is reversed in Appeal No. 83–514 and affirmed in Appeal No. 83–501.

I

Polar Music International AB, the appellant, is a Swedish corporation whose business includes the production of phonograph records and tapes. Appellant is the corporate entity of the popular musical group "ABBA." It has an agreement for the exclusive services of Agnetha Faltskog, Bjorn Ulvaeus, Benny Anderson, and Ann-Frid Lyngstad, who perform together as "ABBA." "ABBA" has been extremely successful in the United States and throughout the world, producing several albums and numerous hit singles.

In order to sell sound recordings in the United States, appellant has entered into an agreement with Atlantic Recording Corporation (hereinafter Atlantic). That agreement requires appellant to produce and deliver to Atlantic master recordings embodying the performances of "ABBA."

The agreement requires that "[e]ach master shall be completed, fully edited and mixed, prior to delivery * * * [to Atlantic] in the proper form for the production of the parts necessary for the manufacture of phonograph records." Appellant is solely responsible for all recording costs incurred in the production of the masters, and is solely responsible for paying the artists and all others in respect of sales of recordings derived from the masters. Subject to certain terms and conditions, Atlantic is granted the right to use the mark "ABBA" and likenesses of the group in connection with the promotion, advertising, distribution, exploitation, and sale of records embodying the master recordings made by appellant. By express provision in the license, appellant controls the nature, and quality of the goods, and Atlantic recognizes appellant's ownership of the marks and that Atlantic's use of the marks inures to the benefit of appellant. Pursuant to the agreement, Atlantic manufactures records in the United States from master recordings supplied by appellant, and Atlantic sells the records using appellant's marks.

In addition to use on sound recordings, the mark "ABBA" has been used in the United States in connection with entertainment services and on a variety of products. Appellant owns United States Registration Nos. 1,072,398 and 1,072,394 of "ABBA" for entertainment services. Appellant also owns Registration Nos. 1,114,496, 1,129,534, and 1,177,362 of "ABBA" for photographs, posters, musical entertainment newspapers, brochures, badges, buttons, guitars, and shoes.

Appellant sought to register the two marks reproduced below for International Class 9, sound recordings:[1]

1. The goods specified in both applications are "sound recordings; namely, phonograph records, pre-recorded tapes, cartridges, disks, and other phonorecords."

It submitted several specimens containing the word "ABBA" as demonstrating trademark use. These included a label affixed to a phonograph record, a record album cover, and a point of purchase display as used in record stores. In addition, appellant submitted as part of the record portions of its agreement with Atlantic and a promotional brochure. In support of its application to register the portrait mark it submitted a cover of a phonograph record. That specimen shows use of the portrait, the word "ABBA," lists the titles of the recorded songs, and indicates that the recording is "A Polar Music Production."

The trademark examining attorney refused registration of both marks. He held that the name of a recording artist or group when used on a phonograph record is not registrable as a trademark for such goods since it identifies the artist performing on the record rather than the source or origin of the goods. With regard to the portrait, he held that "the portrait of the musical singing group ABBA, in special form, is merely the portrait of the recording artists or group whose performance comprises the subject matter of the goods and hence does not function as a Trademark for sound recordings * * *."

Before the board and before us appellant argues that its marks as applied to sound recordings, record covers, and point of sale displays, indicate to the general public a

source or secondary source of the records. It claims the marks are symbols of guaranty of quality which appellant has adopted and offered to the public. In addition, it argues that the mark "ABBA" is used on master recordings which appellant supplies to Atlantic and indicates to Atlantic both the source of the goods and a symbol of guaranty of quality. Appellant draws various analogies to other permitted uses of trademarks including the use of a trademark on a T-shirt and the registrability of a title to a series of books or records. *See, e.g., In re Penthouse International, Ltd.,* 565 F.2d 679, 195 USPQ 698 (Cust. & Pat. App.1977); *In re Expo '74,* 189 USPQ 48 (TTAB 1975); *In re Olin Corporation,* 181 USPQ 182 (TTAB 1973); *In re First National City Bank,* 168 USPQ 180 (TTAB 1970); *In re Appleby,* 159 USPQ 126 (TTAB 1968).

The board found the analogies drawn by appellant to be differentiable. It agreed with the examining attorney that on the record " 'ABBA' does [no] * * * more than inform purchasers of the name of the group of artists whose performance is contained on the sound recordings to which the designation is applied." The board further held that purchasers would not have knowledge that appellant exercises quality control over the goods and that therefore the word "ABBA" did not indicate the source of the goods but rather the source of the performance. With regard to the portrait the board said:

> [T]he portrait applicant seeks to register * * * serves merely to identify the group

of artists whose performances comprise the subject matter of records and the like. * * * [W]e believe that purchasers of these goods would separate the source of the performance contained on the goods from the source of the physical items themselves.[2]

## II

A trademark "includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127. A trademark informs the public of a source of the goods and assures them of its quality. A trademark need not be the name of the manufacturer of the goods and the public need not know the name of the owner of the mark. *See Coca-Cola Co. v. Koke Co. of America,* 254 U.S. 143, 146, 41 S.Ct. 113, 114, 65 L.Ed. 189 (1920); *Saalfield Publishing Co. v. G & C Merriam Co.,* 288 F. 1, 8 (6th Cir.), *cert. denied,* 243 U.S. 651, 37 S.Ct. 478, 61 L.Ed. 947 (1917).

Appellant submitted a license evidencing its right to control the quality of the sound recordings. Since appellant controls the quality of the goods, it is the source of the goods. Any trademark for the sound recordings can therefore only indicate source in appellant since no other entity is the source.[3] The source of the goods does not depend on the public's perception; the public need not know appellant's role. Thus, the board's holding that

---

**2.** The board and trademark examining attorney relied upon a previous board decision *In re Leader Productions, Ltd.,* 135 USPQ 375 (TTAB 1962), where an application to register the name of a singing group, The Troubadors, for phonograph records was denied. The reasoning in that case, as here, was that the mark, "THE TROUBADORS," merely identified the artists performing on the record. As explained in parts II and III, *infra,* we find that argument unconvincing on the facts of this case.

We also note that the Patent and Trademark Office's treatment of this area has been inconsistent. For example, the Stadtler Brothers, a singing group, was granted a trademark registration for its name on phonograph records on

the basis of the submission of a specimen record album cover bearing the words "THE STADTLER BROTHERS," Registration No. 1108461, December 12, 1978. In the instant case where registration of the mark "ABBA" was denied, a phonograph record album cover bearing the name "ABBA" was submitted as a specimen. This is the same type of evidence upon which the Stadtler Brothers received its trademark registration.

**3.** The marks of different entities may, of course, appear on a single product where they serve separate functions; for example, manufacturer/distributor, ingredient/product, licensor/licensee.

"ABBA" cannot function as a trademark for recordings because the public would not know that appellant owns the rights in "ABBA" and that it exercises quality control over the records must be rejected. *E.I. Du Pont de Nemours & Co. v. Celanese Corp.,* 35 C.C.P.A. 1061, 167 F.2d 484, 77 USPQ 364 (1948).

## III

In accord with the Lanham Act, 15 U.S.C. § 1051, appellant submitted specimens indicating the use of the mark "ABBA" and the portrait on phonograph records. The Solicitor, however, argues that the specimens submitted are *prima facie* evidence that the word "ABBA" and the portrait identify the artists and do not function as trademarks. He contends that the marks in question could function as trademarks but have not been shown to on the basis of the evidence submitted. We disagree.

Phonograph records and tapes are much more than "pieces of plastic." They are the embodiment of sound. People purchase sound recordings because of the sounds they contain; it is sound that gives a recording its uniqueness. The quality of a sound recording encompasses *both* the quality of the sounds themselves and the quality of the material on which the sounds are recorded. We take notice of the fact, acknowledged by the board, that it is commonplace for the public to request records and tapes by the name of the recording artist. Thus a prospective purchaser may ask a store clerk for the latest "ABBA" album. The word "ABBA" is a means of identification by which "ABBA" records are distinguished from those of others. We cannot, however, ignore the argument of the Solicitor and board that the word "ABBA" and the portrait of the group simply identify the source of the performance contained on the record. Thus our analysis cannot stop here.

█ In the instant case we find certain factors determinative that "ABBA" functions as a trademark and is not just an identification of the singers. It is well settled that the title to a *series* of records or books is able to function as and be registered as a trademark. *In re Cooper,* 45 C.C.P.A. 923, 254 F.2d 611, 615, 117 USPQ 396, 400 (1958); *In re First National City Bank,* 168 USPQ 180 (TTAB 1970). The reason for this is that

> [T]he name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others. The name of the series is not descriptive of any one book and each book has its individual name or title. A series name is comparable to the title of a periodical publication such as a magazine or newspaper. While it may be indicative either specifically or by association in the public mind, of the general nature of the contents of the publication, it is not the name or title of anything contained in it.

*In re Cooper,* 254 F.2d at 615, 117 USPQ at 400. We find the present situation analogous. Every "ABBA" album and single and tape has the word "ABBA" on it in addition to its title. *See, e.g.,* "Arrival," "Dancing Queen & That's Me," and "Greatest Hits." The public has come to expect and associate a certain quality, not just of sounds but of how the sounds are produced on the record and the physical qualities of the record itself, with the mark "ABBA." Thus the mark "ABBA" indicates not just the source of the performance but a source of the records and tapes and the sound recorded thereon. Furthermore, the contract between appellant and Atlantic permitted Atlantic to use the name "ABBA" and other marks of "ABBA" for only the term of the contract and recognized them as valuable assets owned by appellant.

█ In conclusion, just showing the name of the recording group on a record will not by itself enable that name to be registered as a trademark. Where, however, the owner of the mark controls the quality of the goods, and where the name of that recording group has been used numerous times on different records and has therefore come to represent an assurance of quality to the public, the name may be registered as a trademark since it functions as one.

## IV

With respect to the portrait mark sought to be registered, we also do not find the board's analysis convincing. The board believed the portrait represented a source of the performance, rather than a source of the goods. For the reasons enunciated in Parts II and III of this opinion we do not find the portrait to be merely descriptive of the singers. We note, however, that the board also said:

> There is no evidence of record to suggest that the portrait asserted to be registrable is, in the minds of prospective purchasers, the equivalent of the word mark "ABBA."

On the evidence presently before us, we agree with this statement. We do not know whether the portrait in question has been used on more than the one record album cover that is before us. The examining attorney apparently allowed the portrait mark to be registered for other classes of goods, but we do not know on the record before us on what evidence those registrations were allowed. Thus, the evidence is insufficient to demonstrate that the portrait in question identifies a source of the goods to the public, rather than simply a design on a single record album cover.

## V

We, therefore, hold that on the basis of the evidence submitted the mark "ABBA" functions as a trademark in International Class 9 for sound recordings. We also hold that the evidence before us does not demonstrate that the portrait mark functions as a trademark in International Class 9 for sound recordings. The decision of the board is

REVERSED IN APPEAL NO. 83–514 AND AFFIRMED IN APPEAL NO. 83–501.

SMITH, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the evidence before us does not establish usage of the portrait of the group as a trademark; however, I dissent from the majority and

would also affirm the board's decision to sustain the examiner's refusal to register the name as a trademark of appellant.