THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
January 14, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Ethan A. Arnold*

_____

Serial No. 77366417

_____

James C. Wray for Ethan A. Arnold.

Katina Mister, Trademark Examining Attorney, Law Office 104 (Chris Doninger, Managing Attorney).

_____

Before Cataldo, Bergsman, and Masiello, Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

Ethan A. Arnold, an individual, applied to register on the Principal Register the mark BLATANCY in standard character form for the following goods and services, as amended:

> audio recordings featuring music, in International Class 9;
>
> music entertainment services, namely, providing live musical performances by individuals and groups featuring recorded music, in International Class 41.

After initial examination, the application was published for opposition and subsequently a notice of allowance issued. Applicant then filed a statement of use,

including specimens of use of the mark, as required by Trademark Act § 1(d), 15 U.S.C. § 1051(d). The examining attorney accepted the statement of use with respect to applicant's entertainment services in International Class 41. With respect to applicant's audio recordings, in International Class 9, the examining attorney issued a final refusal of registration under §§ 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, on the grounds that applicant's mark, as used on the specimens of use, (a) failed to function as a trademark, inasmuch as it was merely the title of a single creative work; and (b) failed to function as a trademark, inasmuch as it merely identified the name of a performer featured on the audio recordings. We reverse the refusal based on the ground that the subject matter sought to be registered is merely the title of a single work. We affirm the refusal based on the ground that the subject matter fails to function as a mark because it merely identifies the name of a featured performer.

1. **Is BLATANCY the title of a single work?**

We first consider whether the designation BLATANCY is the title of a single work. Only a "mark" may be registered under the provisions of the Trademark Act. 15 U.S.C. § 1051. The Act defines "trademark" as follows:

> The term "trademark" includes any word, name, symbol, or device, or any combination thereof… used by a person … to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

Trademark Act § 45, 15 U.S.C. § 1127.

It is well settled that the title of a single creative work is not considered a trademark and is, therefore, unregistrable on the Principal Register. *In re Cooper*, 254 F.2d 611, 117 USPQ 396 (CCPA 1958); *Herbko Int'l Inc. v. Kappa Books Inc.*, 308 F.3d 1156, 64 USPQ2d 1375 (Fed. Cir. 2002). The title of a work is, in essence, the *name* assigned to it by its author; as such it describes the work but in no way indicates the source of the work. *Cooper*, 117 USPQ at 399-400; *Mattel Inc. v. Brainy Baby Co.*, 101 USPQ2d 1140, 1144 (TTAB 2011). By contrast, a title used on a series of works is, indeed, registrable. "The name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others." *Cooper*, 117 USPQ at 400.

The relevant specimen of use submitted by applicant consisted of an image of a compact disc; applicant later filed a clearer image of the CD (marked as Exhibit 10), which is set forth below:



During the course of examination, and in response to the examining attorney's rejection of applicant's proffered specimens and evidence, applicant

submitted the following additional samples of packaging for his goods, marked by the applicant as follows:

Exhibit 8 - Album cover/booklet to album entitled: BLATANCY:



Exhibit 9 - Reverse side of Exhibit 8:



Exhibit 11 - Additional CD:[1]



---

[1] Exhibits 8 through 11 were submitted as part of applicant's response of December 1, 2009.

Exhibit 24 - Outside of a folded card that is inserted in the Exhibit 10 CD case:



Exhibit 25 - Inside of a folded card that is inserted in the Exhibit 10 CD case:[2]

'SIMPLY ORIGINAL'©2008
-E. Arnold-
Publisher: Simply Original Music™ (ASCAP)

Producer: **BLATANCY™**, for Simply Original Music (ASCAP)
Production /Distribution: J. Arnold for Simply Original Music (ASCAP)
Mixtape: Nebula
Management: Coming Up Records/ jsa@cominguprecords.com
Inspiration: Chris 'Black Swann' Swann, Donna Wolf
Photography: www.resolusean.com
Eyewear: Exalt Cycle

**BLATANCY** ™          **COMING UP RECORDS** ™
Official Website:        www.cominguprecords.com
www.blatancy.net        info@cominguprecords.com
B-1@blatancy.net

**SIMPLY ORIGINAL MUSIC**™
www.simplyoriginalmusic.com
info@simplyoriginalmusic.com

P.O. Box 234
Cardiff-by-the-Sea
CA, 92007
1-760-633-3323

WARNING: All rights reserved. Unauthorized duplication, reproduction, lending, public performance/broadcasting prohibited, unethical, and a violation of applicable laws.

Produced in the USA.

**BLATANCY™** is simply original. He was born and raised on the West Coast of 'Cali' in San Diego. His street name is "B-1", but his performance name, **BLATANCY™**, is an acronym for **B**old **L**yrics **A**cquired **T**hrough **A**lotta **N**otably **C**onstructed **Y**ears, and both the definition and acronym influences his lyrics.

"Music is my life. After being hit by a car as a young boy and suffering a brain injury – I thank God for all he has given me that is good. The pain and the joy blended together over the years lead me to music as an outlet. First, lessons presented melodically. Then, I started writing lyrics as a way to process the pain, and out of that joy was created...and it's all good. I am who I am today because of this."

The encouragement, guidance and support I have received from Kevin 'D.J. Battlecat' Gilliam and Chris 'Black Swann' Swann, can only be repaid when I can 'pay it forward' encouraging others. You are a blessing and role models for all of us, in music, and as men. To: Ice-T, DMC, and other ASCAP brothers and sisters pushing me to follow my dreams, you have been a gift that is also much appreciated. I won't let you down!

This wouldn't be possible without my family, always there for me, my grandparents whose own lives revolved around music, my many friends, and those fans who listen to my music.

"This be my futuristic flow, to let you know that I am...
Simply Original!"©2009

BLATANCY™ aka 'B-1'

---

[2] Exhibits 24 and 25 were submitted as part of applicant's request for reconsideration of June 24, 2010.

The examining attorney contends that the applicant's mark is used only as the title of the applicant's audio recording. The mark is presented as follows on the CD shown in Exhibit 10:

B.L.A.T.A.N.C.Y.!™ – aka – B-1
Bold Logistics Acquired through Alotta Notably Constructed Years
! 2008-09 All Rights Reserved !
Member of A.S.C.A.P.

The examining attorney's brief does not state a rationale for perceiving BLATANCY as the title of applicant's recording; nor does such a rationale appear in the Office actions setting forth her refusal to register the mark. We note several aspects of the presentation of the mark on the specimen of use that undercut the perception of BLATANCY as a mere title. A title does not typically have an alias ("aka"), although an individual person might. A title is not likely to be characterized as a member of the association known as A.S.C.A.P.[3] The record does, however, include an excerpt from applicant's website, marked as applicant's Exhibit 4, which contains the following statement:

> I have a single, **SIMPLY ORIGINAL**©, almost ready to
> launch. We're in the studio even as you read this. It will
> be part of my first CD album, entitled **'BLATANCY'**.

The CD shown in Exhibit 10 includes a song entitled "Simply Original" (along with six other songs); accordingly, the above excerpt from Exhibit 4 strongly suggests that applicant intended to give this recording the title BLATANCY.

In any event, we need not finally determine whether the designation BLATANCY functions only as a title. Even if it is a mere title, the applicant has

---

[3] American Society of Composers, Authors and Publishers.

overcome the examining attorney's refusal by demonstrating that he has used the mark on a series of works. Applicant has shown use of the designation on a second CD, shown in Exhibit 11. The examining attorney did not dispute that the additional CD shown in Exhibit 11 constitutes a separate work and did not inquire as to its specific contents or the extent of its distribution. Because the record does not clearly indicate that the content of the two CDs is the same, we give the applicant the benefit of the doubt that they contain different content, such that Exhibit 11 constitutes a different work from Exhibit 10. In other words, the record indicates that there are at least two works identified by the BLATANCY designation. The applicant's use of BLATANCY on more than one audio recording effectively demonstrates that the designation is not merely the title of a single work, and that it can function as a trademark. *Cooper*, 117 USPQ at 400.

The examining attorney argues in her brief that "the combination of [the] two CDs" shown in Exhibits 10 and 11 "fails to create a series of works" because the mark appears on Exhibit 10 in the form B.L.A.T.A.N.C.Y. (with a period after each letter), which differs from both the mark shown on Exhibit 11 and the mark sought to be registered.[4] The examining attorney rejects the other evidence of record with the conclusion that "The other exhibits discussed above are unacceptable as well because they do not show the mark used on a series of creative works either," even though she acknowledges that those exhibits include "cards inserted in CDs" and

---

[4] Examining attorney's brief at 5. Despite the examining attorney's objection to the form in which the mark appears on the original specimen of record, the examining attorney never refused registration on the ground that the mark on the specimen did not match the mark sought to be registered. That question is not before us, and we express no opinion on it.

"the liner or cover from the same CD."[5]  The examining attorney should not have so dismissed Exhibits 8, 9, 24 and 25, which show that packaging for the Exhibit 10 CD makes prominent use of the mark in the form BLATANCY.  Placement of a mark on such packaging is a conventional form of trademark "use," as contemplated by Trademark Act § 45, 15 U.S.C. § 1127.  All of this evidence, considered together with Exhibits 10 and 11, shows use of the mark BLATANCY on both the 7-song CD shown in Exhibit 10 and the additional CD shown in Exhibit 11. We find that, in the aggregate, this evidentiary showing is sufficient to overcome the objection that the proposed mark is merely the title of a single work rather than a mark.

**2.     Is BLATANCY merely the name of the performer and not a trademark?**

We now address the examining attorney's second refusal, which is based on the objection that BLATANCY fails to function as a mark because it is actually the name of the performer that is featured on applicant's recordings.  As before, the ultimate question is whether applicant uses the designation BLATANCY in such a manner that it functions to indicate the source of applicant's goods, thereby qualifying as a "mark" that may be registered.

Courts have long recognized that the authors of creative works may become separated from the right to control the exploitation of their works.  *See Clemens v. Belford, Clark & Co.*, 14 F. 728 (C.C.N.D. Ill. 1883).  For example, the author of a book may assign the entirety of his copyright to a publisher; thereafter the publisher, not the author, will be the source of authorized copies of the book.  In the

---

[5] Examining attorney's brief at 5.

performing arts, such as applicant's field of music, creative works are frequently the result of collaboration, thereby raising questions over who is the source of the ultimate work and who controls its nature and quality. Courts and the Board have applied essentially the same standard of analysis to the names of authors and the names of performing artists in determining trademark function.

In *In re Polar Music International AB*, 714 F.2d 1567, 221 USPQ 315 (Fed. Cir. 1983) the Court considered whether the name of the musical group ABBA was registrable for audio recordings. The Court had before it evidence that the corporate applicant, Polar, had a contract for the exclusive services of the members of the band called ABBA; a contract with the manufacturer of its sound recordings relating to the production of the goods; and a license agreement whereby Polar allowed the manufacturer to use the mark ABBA. The license agreement also provided that Polar would control the nature and quality of the goods and contained the manufacturer's acknowledgement that Polar owned the mark. The Court held:

> In conclusion, just showing the name of the recording group on a record will not by itself enable that name to be registered as a trademark. Where, however, the owner of the mark controls the quality of the goods, and where the name of that recording group has been used numerous times on different records and has therefore come to represent an assurance of quality to the public, the name may be registered as a trademark since it functions as one.

*Id*. at 318.

In a case dealing with the registrability of the name of an author as a trademark for books, the Board interpreted *Polar Music* to stand for the proposition

9

that the name of a performer may function as a trademark for a work where there is evidence that the name also serves the function of a mark.

> We conclude that, as a general rule, an author's name is not registrable for a single work but may be registrable for a series of written works, when there is sufficient other indicia that the name serves more than as a designation of the writer, that is, that it also functions as a mark. This may be shown by providing evidence of the sort presented in *Polar Music*, i.e., evidence establishing that the author controls the quality of her distributed written works and controls use of her name, so as to indicate the quality of those works; or it may be shown, akin to the showing in *Scholastic*,[6] by submitting evidence of promotion and recognition of the author's name so that prospective readers, when they see the name, "know what they are getting." *Scholastic*, 23 USPQ2d at 1778. In addition, evidence of promotion and recognition of the author's name would have to be of the type that would identify the author as the source of a series of works.

*In re First Draft Inc.*, 76 USPQ2d 1183, 1190 (TTAB 2005).

Following the guidance of the courts and the Board, the examination policy of the U.S. Patent and Trademark Office is as follows:

> Any mark consisting of the name of an author used on a written work, or the name of a performing artist on a sound recording, must be refused registration under §§1, 2, and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052, and 1127, if the mark is used solely to identify the writer or the artist. …
>
> …
>
> However, the name of the author or performer may be registered if:

---

[6] *In re Scholastic Inc.*, 23 USPQ2d 1774 (TTAB 1992). The *Scholastic* case did not deal with an author or performer's name, but rather with the titles of creative works. However, inasmuch as the ultimate issue was whether a designation functioned in the marketplace as a source-indicating trademark, the case is instructive.

(1) It is used on a series of written or recorded works; and

(2) The application contains sufficient evidence that the name identifies the source of the series and not merely the writer of the written work or the name of the performing artist.

TMEP §1202.09(a) (Oct. 2012).

A showing that the name functions as a source identifier may be made by submitting evidence of either: (1) promotion and recognition of the name as a source indicator for the series…; or (2) the author's or performer's control over the name and quality of his or her works in the series…

TMEP § 1202.09(a)(ii).

If the applicant maintains control over the quality of the goods because the goods are published or recorded directly under the applicant's control, the applicant may submit a verified statement that "the applicant publishes or produces the goods and controls their quality."

TMEP § 1202(a)(ii)(B).

It is apparent from the evidence of record that BLATANCY is the name of a performing artist associated with applicant's goods. Exhibit 25 (a CD insert) provides biographical information for an individual named Blatancy:

**BLATANCY™** is simply original. He was born and raised on the West Coast of 'Cali' in San Diego. His street name is "B-1", but his performance name, **BLATANCY™**, is an acronym for **B**old **L**yrics **A**cquired **T**hrough **A**lotta **N**otably **C**onstructed **Y**ears, and both the definition and acronym influences his lyrics.

*See also* Exhibit 7, which includes the following text:

**BLATANCY™** is a pop/hip-hop/rap lyricist, songwriter, publisher and performer (ASCAP), who was born and raised on the West Coast (the best coast) of California in San Diego.

11

> He has gigged at the San Diego County Fair for two years, the Lyceum Theater, Club Montage, and private parties. He is currently working on his first CD, titled "**BLATANCY**" featuring his lead single "Simply Original".

That BLATANCY is a pseudonym of applicant is stated, somewhat indirectly, in applicant's reply brief at p. 1 ("Exhibits 1-4 indicate that E. Arnold, the applicant known by the stage name BLATANCY is a source of music.")[7]

In refusing to register applicant's mark on the ground that it did not function as a mark but rather identified the name of a featured performer, the examining attorney's various Office actions essentially followed the two-pronged approach set forth in TMEP § 1202.09(a); that is, the examining attorney required that the applicant demonstrate use of the proposed mark on a series of works, and required evidence that the proposed mark serves to identify the source of the series. As we have discussed above in our treatment of the examining attorney's other refusal, the applicant satisfactorily demonstrated use of the proposed mark on a series of works. The second prong of the test remains to be addressed.

On at least two occasions, the examining attorney advised that applicant could fulfill the second prong of the test by submitting a verified statement as to his control over the nature and quality of the goods:

> However, if the sound recordings are recorded directly under applicant's control, applicant may submit solely as evidence of control the following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20:

---

[7] The issue of whether applicant and BLATANCY are the same person is not essential to either the examining attorney's refusal or the applicant's ability to overcome that refusal.

> **"The applicant produces the goods and controls their quality."**[8]

The applicant did not file the suggested verified statement. Nor did the applicant file any other verified statement relating to the question of control over the nature and quality of the goods. Accordingly, we must consider whether applicant has demonstrated, through submission of evidence, that he controls the nature and quality of his goods and the use of the name BLATANCY thereon in such a way as to indicate the quality of those works; or, alternatively, whether this name has become so widely recognized, through vigorous promotion, that it now identifies applicant as the source of a series of works. *First Draft*, 76 USPQ2d at 1190. On this point, the Board has required unambiguous evidence of an applicant's control over the mark and the goods, as well as evidence to show that the mark functions as a source indicator. *First Draft*, *passim*.

The Board finds particularly relevant the following evidence of record:

Exhibit 3:    Excerpt of applicant's MySpace Music page

Exhibit 4:    Official website of BLATANCY

Exhibit 7:    Promotional advertisement cards[9]

Exhibit 22:   Additional excerpt of applicant's MySpace Music page

Exhibit 25:   Inside of a folded card that is inserted in the Exhibit 10 CD case.[10]

---

[8] Office action of February 22, 2011, p. 2 (emphasis in original). *See also* Office action of July 27, 2010, p. 2.

[9] Exhibits 3, 4 and 7 were submitted with applicant's response filed on December 1, 2009.

[10] Exhibits 22 and 25 were submitted as part of applicant's request for reconsideration of June 24, 2010.

The evidence relating to control over the mark and over the nature and quality of the goods is conflicting and of uncertain meaning. Exhibits 3 and 22 indicate the involvement of a "Record Label" named "ComingUp Records™." Exhibit 7 refers to ComingUp Records as "Label/Management" and refers to an entity called "Simply Original Music" as an involved "Publisher." Exhibit 25 contains the following indicators:

'SIMPLY ORIGINAL'©2008
-E. Arnold-
Publisher: Simply Original Music™ (ASCAP)
Producer: BLATANCY™, for Simply Original Music (ASCAP)
Production /Distribution: J. Arnold for Simply Original Music (ASCAP)
Mixtape: Nebula
Management: Coming Up Records/ jsa@cominguprecords.com

The evidence discussed above raises a host of questions regarding the control over applicant's mark and goods. Publishers, record labels, copyright owners and managers are all types of persons and entities who might be involved in controlling the mark and the goods. Although Exhibit 7 states that "BLATANCY™ is a… publisher" and Exhibit 25 refers to BLATANCY as a "Producer," these indications are contradicted by other references in the evidence. For example, Exhibit 25 refers to Simply Original Music as the publisher, and indicates that BLATANCY's work as producer is "for Simply Original Music." As the issue of control was raised by the examining attorney's refusal and the various Office actions, it was incumbent upon applicant to explain the relationship between himself and others involved in bringing applicant's goods to market, including Simply Original Music, Coming Up

14

Records, and J. Arnold. The discussion of the evidence in applicant's briefs does nothing to elucidate the relationships among these various players:

> Clearly, Exhibit 7, a booklet within an album, "BLATANCY™ is a pop/hip hop/rap lyricist, songwriter, publisher and performer."
>
> Exhibit 7 conclusively shows that BLATANCY is an indication of source of the exhibits.

Applicant's brief at 1-2.

> Exhibits 5-7 are brochures that indicate that BLATANCY is a source of music and a <u>publisher</u>. See lines 1 in both columns of Exhibit 7.
>
> …
>
> Exhibits 16-22 indicate that BLATANCY is a source of music.
>
> Exhibit 22 states that BLATANCY is a lyricist songwriter, <u>producer</u>, <u>record label founder</u>, <u>music publisher</u>.

Applicant's reply brief at 1-2 (emphasis in original).

Applicant's conclusory discussion of the evidence does not reach the factual questions that are central to this inquiry, namely, who controls the mark; who controls the nature and quality of the goods; and how has the mark become an indicator of applicant as the source of the goods? The conclusions set forth in applicant's briefs are *not* apparent on the face of the evidence. Rather, the promotional materials placed in evidence by applicant give rise to substantial ambiguity as to control over the mark and the goods. It was applicant's burden to dispel such ambiguities by means of reliable fact-based evidence, such as affidavits or business records, and to thereby address the central question of control over the

mark and the goods. Applicant's submissions do not meet the evidentiary standards set forth in *Polar Music* and *First Draft*.

On the record before us, the applicant has failed to establish that he controls the mark and the nature and quality of the goods in such a way as to cause the name BLATANCY to become an indicator of the source of the goods. Accordingly, we affirm the refusal on the ground that applicant's proposed mark is merely the name of a performer featured on the applicant's musical recordings and, as such, fails to function as a mark.

**Decision:** The refusal to register on the ground that the applicant's mark is merely the title of a single work is reversed. The refusal on the ground that applicant's proposed mark is merely the name of a featured performer and, as such, fails to function as a mark is affirmed and registration for the goods in Class 9 is refused.

The application will be forwarded to publication in connection with the services in Class 41.