**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

MBA

Original Decision Mailed: May 1, 2023
Redesignation Mailed: June 14, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board
————
*ZeroSix, LLC*
————

Serial No. 88981832
————

**By the Trademark Trial and Appeal Board**:

The Board has chosen to redesignate the decision issued on May 1, 2023 as a

precedent. A copy of the decision, bearing the precedential designation, is attached.

This Opinion is a Precedent
of the TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board
————

*ZeroSix, LLC*

————

Serial No. 88981832

————

Ellie Schwimmer of Live Nation Worldwide, Inc.
  for ZeroSix, LLC.

Charles H. Hiser IV, Trademark Examining Attorney, Law Office 129,
  Pamela Y. Willis, Managing Attorney.

————

Before Bergsman, Adlin and Lebow, Administrative Trademark Judges.

Opinion by Adlin, Administrative Trademark Judge:

"Boys World" is the name of a musical "girl group" that is sometimes referred to

as "the Gen Z Spice Girls."

Applicant ZeroSix, LLC seeks to register the group's name, BOYS WORLD, in

standard characters, for "audio recordings featuring music," in International Class

9.[1] The Examining Attorney refused registration under Sections 1, 2 and 45 of the

—————

[1] Application Serial No. 88981832, which is a child application divided from parent application Serial No. 88486410. The parent application was filed June 24, 2019 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on an alleged intent to use the mark in commerce. On the same day Applicant filed its Request to Divide, it filed a Statement of Use claiming first use dates of October 23, 2020 for the goods in the child application ("audio recordings featuring music").

Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that BOYS WORLD does not function as a mark. According to the Examining Attorney, BOYS WORLD is "merely the name of a performing group and would not necessarily be seen as a source identifier." October 29, 2021 Office Action TSDR 1.[2] After the refusal became final, Applicant appealed, and filed a request for reconsideration that was denied. The appeal is fully briefed.

## I.  Evidentiary Objection

The Examining Attorney's objection, 8 TTABVUE 2,[3] to a list of third-party registrations Applicant included in its Appeal Brief, 6 TTABVUE 12-13, is granted for two reasons. First, "[t]he record should be complete prior to the filing of an appeal. Evidence should not be filed with the Board after the filing of a notice of appeal." Trademark Rule 2.142(d). Second, merely listing third-party registrations does not make them of record. *See In re Peace Love World Live,* LLC, 127 USPQ2d 1400, 1405 n.17 (TTAB 2018) ("[T]he list does not include enough information to be probative. The list includes only the serial number, registration number, mark, and status (live or dead) of the … registrations. Because the goods are not listed, we do not know whether the listed registrations are relevant."); *see also Edom Labs. Inc. v. Licher*, 102 USPQ2d 1546, 1550 (TTAB 2012).

---

[2] Citations to the application file are to the USPTO's Trademark Status & Document Retrieval ("TSDR") online database, by page number, in the downloadable .pdf format.

[3] Citations to the appeal record are to TTABVUE, the Board's online docketing system. The number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear.

## II.  Does BOYS WORLD Function as a Mark for Audio Recordings Featuring Music?

Performing artist names such as "Bruce Springsteen" or "Rolling Stones" obviously identify the artist. Performing artist names may also serve another purpose, however, "as a means of identification by which [the artist's] records," such as "Born to Run" or "Exile on Main Street," may "be distinguished from the records of others." *In re Spirer*, 225 USPQ 693, 694 (TTAB 1985). In fact, "it is commonplace for the public to request records and tapes[4] by the name of the recording artist." *In re Polar Music Int'l AB*, 714 F.2d 1567, 221 USPQ 315, 318 (Fed. Cir. 1983).

While a performing artist's name may identify and distinguish the artist's records, "that does not mean that [the artist's name] necessarily serves as a trademark for [the artist's] records." *In re Spirer*, 225 USPQ at 694 (citing *In re Polar Music*, 221 USPQ at 315). Rather, as the Federal Circuit explained in *Polar Music*, sometimes an artist's name may "simply identify the source of the performance contained on the record," which is not enough to establish that the artist's name functions as a mark for the recording. *In re Polar Music*, 221 USPQ at 318.

Typically, in order to function as a mark for recordings, a performing artist's name must be used for a series of recordings. *Id.* (citing *In re Cooper*, 254 F.2d 611, 117

---

[4] When *Polar Music* was decided in 1983, recordings were typically offered on what the Federal Circuit called "records and tapes" and "pieces of plastic." *In re Polar Music*, 221 USPQ at 318. The record in this case reveals that recordings are now often offered digitally, via the Internet, for example through streaming services or social media. The evidence of record does not reveal how producing and distributing digital recordings differs from producing and distributing analog recordings, or whether or how any such differences relate to or impact trademark use for recordings, or the public's perception thereof.

USPQ 396, 400 (CCPA 1958) ("The name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others.")); [5] *In re Scholastic Inc.*, 23 USPQ2d 1774, 1778 (TTAB 1992). In addition, there must be evidence that the name functions as a mark.

> This may be shown by providing evidence of the sort presented in *Polar Music*, i.e. evidence establishing that the author controls the quality of her distributed works and controls use of her name, so as to indicate the quality of those works; or it may be shown, akin to the showing in *Scholastic*, by submitting evidence of promotion and recognition of the author's name so that prospective readers, when they see the name, "know what they are getting." *Scholastic*, 23 USPQ2d at 1778. In addition, evidence of promotion and recognition of the author's name would have to be of the type that would identify the author as the source of the series of works.

*In re First Draft Inc.*, 76 USPQ2d 1183, 1190 (TTAB 2005). *See also In re Arnold*, 105 USPQ2d 1953 (TTAB 2013) (finding that the performer's name was used for a series, but did not identify the source of the series); *In re Scholastic*, 23 USPQ2d at 1778 ("[T]he designation THE MAGIC SCHOOL BUS, as shown on book covers, functions as a trademark and not just as a portion of a book title. Where the designation THE MAGIC SCHOOL BUS has been used in each title of each book of the series and also has come to represent a source to purchasers, the designation may be registered as a trademark since it functions as one."); TMEP § 1202.09(a) ("the name of the author or performer may be registered if: (1) It is used on a series of written or recorded

---

[5] While *In re Cooper* addressed a book title rather than a performing artist's name, for registration purposes these types of identifiers are treated similarly. *Compare* Trademark Manual of Examining Procedure ("TMEP") § 1202.08 *with* TMEP § 1202.09.

works; and (2) The application contains sufficient evidence that the name identifies the source of the series and not merely the writer of the written work or the name of the performing artist.").

Thus, in this case, we must decide whether BOYS WORLD merely identifies the girl group of that name and "the source of the performance" on BOYS WORLD recordings, or whether BOYS WORLD also functions as a mark for Applicant's "audio recordings featuring music." We find that BOYS WORLD functions as a mark.

We start with Applicant's specimen, on which the Examining Attorney's initial refusal to register was based. The specimen includes two excerpts from apps or websites. The excerpt reproduced below on the left promotes the BOYS WORLD extended play ("EP") recording entitled "While You Were Out," and provides links to streaming or other services where the EP may be played or downloaded. The excerpt reproduced below on the right displays Spotify's BOYS WORLD page, which provides links to, *inter alia*, the EP, a number of BOYS WORLD singles and other recordings "featuring Boys World."




These promotional and Spotify pages both display the BOYS WORLD mark prominently on the digitally-rendered "cover" of each EP and single. In addition, the

"cover" of "Boys World Radio by Spotify" displays the BOYS WORLD mark. *See In re Scholastic*, 23 USPQ2d at 1777 (reversing failure to function refusal where "[T]he words THE MAGIC SCHOOL BUS are prominently displayed on the books' covers, and are in a larger, bolder style of type and different color from the remainder of each title. Moreover, the words appear on a separate line above the remainder of each title."). The two largest features of the Spotify page are the page heading which prominently features the BOYS WORLD mark next to a picture of the group, and the "About" section at the bottom of the page, which also features a picture and description of the group, stating that "BOYS stands for BEST OF YOURSELF, and WORLD is the space we want to create." The Spotify page indicates at both the top and bottom that the group has over 335,000 "monthly listeners" on the Spotify service.

We find that Applicant's specimen reveals both "promotion and recognition ... of the type that would identify [BOYS WORLD] as the source of the series of works." *In re First Draft*, 76 USPQ2d at 1190. Indeed, both pages promote BOYS WORLD, and enable consumers to play or download BOYS WORLD music. Furthermore, the BOYS WORLD Spotify page reveals that the group is the source of a series of recordings (various singles and an EP) and that the group is recognized by least 335,000 "monthly listeners" on Spotify. The group is also recognized (and promoted) by Spotify itself, which created "BOYS WORLD Radio by Spotify." The "While You Were Out" promotional page links to 10 additional music services which allow fans to play or

download BOYS WORLD music, including the iTunes store, YouTube, Amazon Music and Pandora.

After the Examining Attorney issued the failure to function refusal based on the specimen, Applicant submitted additional evidence. While some of the additional evidence was intended to establish "that the mark is used on a series of sound recordings," October 23, 2021 Office Action response TSDR 1, that is no longer at issue. In fact, the Examining Attorney concedes in his Appeal Brief that "the first element," specifically "the evidence of a series, has been met in this case and is not at issue … Thus, the only issue remaining is whether the applicant met their burden of proof by providing sufficient evidence of promotion and recognition such that the performing artist's name in the mark would be perceived by consumers as identifying the source of the series and not merely the recording artist." 8 TTABVUE 4. We thus turn to the evidence relating to that sole remaining issue, and find that it is consistent with Applicant's specimen in showing both promotion and recognition of BOYS WORLD.

Applicant introduced Apple Music and Amazon Music listings for BOYS WORLD recordings, through which consumers are able to play or purchase BOYS WORLD music, or watch BOYS WORLD music videos:



October 23, 2021 Office Action response TSDR 12, 16 (highlighting added).

Applicant also introduced the BOYS WORLD YouTube page, through which consumers may access: music videos and recorded live performances of songs from the group's EP; the BOYS WORLD Spotify, Instagram, Tik Tok and Twitter pages; the BOYS WORLD website; and videos of the group rehearsing, providing a dance tutorial and engaging in other activities:





April 26, 2022 Request for Reconsideration TSDR 12, 23 (highlighting added).

As shown, the BOYS WORLD YouTube page has 154,000 subscribers and the "Girlfriends" official music video has been viewed 2.1 million times on YouTube. The

BOYS WORLD YouTube page also includes at least five episodes of "Girlfriends: The Show," which may be accessed by clicking immediately above the BOYS WORLD mark:



*Id.* at 24 (some highlighting added).

The BOYS WORLD TikTok page has 2 million followers and 64.5 million "likes":



*Id.* at 27 (some highlighting added).

This additional evidence also reveals promotion and recognition of BOYS WORLD. In fact, all of the linked videos, music and other content on these pages prominently displays or is reached through the BOYS WORLD mark, and all of it promotes the group in one way or another. This evidence also shows widespread recognition of the

11

group and its BOYS WORLD mark. Not only do the most popular pages and videos have hundreds of thousands or in several cases millions of views or followers, but many other songs or videos on these pages have tens of thousands of views. The group is so widely recognized that a third-party operates a Twitter account called "Boys World Stats & Records," which keeps track of the number of views/downloads of BOYS WORLD material:



*Id.* at 38. According to the page, the Boys World song "Touched By an Angel" exceeded 900,000 streams on Spotify, becoming the sixth song to do so, and "Girlfriends" surpassed 6 million streams on Spotify. *Id.*

A number of articles, in online publications, as well as BILLBOARD and PEOPLE, describe the group, as well as the group's members, origin story, music and philosophy. *Id.* at 45-108, 111-113, 118-124. These articles, perhaps especially the articles in well-known publications BILLBOARD and PEOPLE, reveal widespread

recognition of BOYS WORLD and Applicant's identified goods that bear the BOYS WORLD mark.[6] The group has 190,000 followers on Instagram and 31,200 on Twitter, *id.* at 125, 127, numbers which also show widespread recognition of the group, especially when considered with the much larger numbers of YouTube followers and Spotify listeners.

## III. Conclusion

Boys World is consistently identified – by streaming services and social, print and web media – as the source of BOYS WORLD audio recordings featuring music. This is not surprising because BOYS WORLD has been heavily promoted and widely recognized as the source of the group's music. As a result, consumers "know what they are getting" when they purchase BOYS WORLD "audio recordings featuring music." Thus, BOYS WORLD functions as a mark.[7]

**Decision**: The refusal to register Applicant's mark for the identified services under Sections 1, 2 and 45 of the Trademark Act is reversed.

---

[6] The Examining Attorney argues that although these articles are "evidence of promotion and recognition of [the group's] name as a source identifier," the evidence is nonetheless "insufficient because the articles are missing important context with regards to circulation and readership." 8 TTABVUE 5-7. We are not persuaded. The question here is not whether BOYS WORLD has acquired distinctiveness. The question is whether the mark is promoted and recognized as a source identifier.

[7] The Examining Attorney argues that the record "does not show unambiguous control of the mark," pointing out that BOYS WORLD was formed by KYN Entertainment, which is identified in copyright notices as an owner of certain BOYS WORLD recordings. 8 TTABVUE 8-10. This argument is not well-taken because, as the Federal Circuit pointed out in *Polar Music*, a trademark "need not be the name of the manufacturer of the goods and the public need not know the name of the owner of the mark." Moreover, "the public need not know [Kyn Entertainment's] role." *In re Polar Music*, 221 USPQ at 317.